THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHESTER GOW, Defendant-Appellant.

Third District    No. 77-538

Opinion filed October 31, 1978.—Rehearing denied December 5, 1978.

Martin Rudman, of Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (James E. Hinterlong and Joseph A. Mueller, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Chester Gow appeals from a conviction of armed robbery and a subsequent sentence of four years to four years and one day, as a result of such conviction, following a bench trial. Gow was convicted of armed robbery in violation of section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a)).

On appeal in this court, the only issue raised is whether the defendant has been proven guilty, beyond a reasonable doubt, of the crime of armed robbery.

We are, therefore, confronted with the question of determining whether the evidence presented at the trial was sufficient to support the

trial court's finding that defendant was guilty of the crime as charged. It appears from the record that on January 24, 1977, at approximately 4:15 p.m., a man approached the check-out clerk at the Country Mart Grocery Store on Dixie Highway in Crete, Illinois. The man placed a few groceries on the counter and then drew a gun on the check-out clerk, Donna Heideman, demanding money from her. The gunman also ordered 16-year-old Brian Leslie, who had been at the counter, to put his hands on the counter. Meanwhile, the store owner, Ronald Olson, entered the store bringing with him a dolly of cigarettes. The gunman pointed the pistol at Olson and demanded his money. Olson pulled his wallet out showing the gunman that there was no money in it. The gunman then took $85 in currency, which Heideman had placed on the counter, and left the store. The robbery had been completed in 3 to 5 minutes.

Witnesses saw the robber get into the passenger side of a white Midas camper (Dodge chassis). Olson had previously observed the camper pulling into the store's parking lot. The camper was driven by a person other than the robber. Olson and Leslie watched the camper as it drove off southbound on Dixie Highway (Illinois Route No. 1), with its passenger side facing the store. Olson also saw the camper's license plate number and told Heideman to write it down, but she was then unable to do so. Olson then told Leslie to write the number down. Leslie said he first wrote 2261RV, but then changed the first 2 to a 4, after reading the number back to Olson and being corrected by Olson. Olson denied he corrected Leslie but said he had read the number twice.

At 4:29 p.m., Illinois State Trooper Martin Steiber received the message that a white Dodge camper, Illinois license plate 4261RV, last seen heading south on Dixie Highway, was wanted in connection with an armed robbery which had occurred at the Country Mart. At approximately 4:35 p.m., Steiber, traveling east on Pauling Road, noticed a vehicle fitting the description given, but the license plate number was 42261RV. It was traveling west on Pauling Road. Steiber turned his squad car around and stopped the camper at approximately 4:38 p.m., roughly nine or ten minutes after the robbery and approximately five miles from the robbery scene. There was no evidence that the trooper had any difficulty stopping the vehicle.

When the vehicle was stopped, defendant was sitting on the passenger side of the vehicle, which had been driven by the only other occupant, James Masterson. Both passenger and driver were arrested.

The record indicates that there were similarities and differences in the descriptions of the robber given by the three occurrence witnesses and, also, about the appearance of defendant as compared with the descriptions given by the witnesses. We have noted the variation in the license number which still contained numbers which actually appeared

on the license plate of the vehicle which was stopped. All three occurrence witnesses testified that the robber wore a knit hat, without a brim, but no such hat was found in defendant's possession. It was also stipulated that defendant, at the time of his arrest, was wearing a brown hat, not a knit or pullover. The robber was described by witness Leslie as wearing blue jeans and a red and white checkered coat. Olson described the coat as checkered or plaid with red, gray and black. It was stipulated that defendant was wearing blue jeans and a maroon and white plaid jacket. (Attention is called to the fact that maroon is close to red in the color spectrum). Leslie was also unable to identify defendant's jacket when it was shown to him after the arrest.

Although $85 was taken in the robbery, it was stipulated that defendant had only $40 in his possession at the time of the arrest and that Masterson only possessed $1.60. Olson described the robber to police as weighing 230 lbs. and being 50 to 52 years old. It was stipulated that defendant weighed 190 lbs. and was 44 years old. In addition, each of the three witnesses failed to mention defendant's prominent facial scars. Leslie also testified the camper had a red stripe but it was stipulated that the camper in which defendant was arrested had a green stripe. Neither Leslie nor Olson said anything about the damage to the passenger side of the camper. The camper in which the defendant was arrested was in fact a white Midas camper with a Dodge chassis as the witnesses had described the getaway vehicle.

Olson also told police that the robber's pistol was a .38 or a .45 automatic. A pistol which was found in defendant's camper was a .9 mm Random (automatic).

On January 15, 1977, nine days before the robbery, defendant brought his camper to Anthony Sleeter, an insurance company adjustor. After the adjustor had viewed the damage on the passenger side of the camper, he telephoned Michael Knaak of Midwest Tire located approximately 2½ miles from the Country Mart and said he would send defendant with a camper to Knaak's place of business. It was stipulated that on the day of the robbery, defendant and Masterson went to Midwest Tire at 2 p.m., but left after a short time when they discovered Knaak was not present. It was further stipulated that defendant and Masterson returned to Midwest Tire at 4:30 p.m. the same day but left shortly thereafter after learning that Knaak had not returned.

We note here that 4:30 p.m. was after the completion of the robbery, but before defendant's apprehension.

While defendant was in custody, a photograph was taken of him and placed in a five-photograph lineup. A photographic lineup was shown separately, on January 25, 1977 (a day after the robbery), to Heideman, Leslie and a third person who had come into the store during the robbery.

Heideman and Leslie picked defendant's photograph as the robber, but the third person was unable to pick out any photograph. Olson was shown the same photographic lineup on February 14, 1977, and he also identified defendant's photograph as being that of the robber.

At defendant's bench trial, defendant sat in the spectator section of the courtroom wearing a wig, mustache, and horn-rimmed glasses while the State presented its case. A male model, hired by the defense, whose appearance had been altered to resemble the defendant's appearance, sat at the defense counsel table with defendant's attorney. Photographs of the model and the defendant in the record show the two to be very similar looking, though not identical.

Although all three State witnesses identified the model as the man who committed the robbery, their identifications were less than 100% positive. Heideman was the least positive. She said she believed the model was the robber but that he looked quite different from when she first saw him. Because of the change in appearance, Heideman told the court she could not be certain. Leslie said the model looked like he had gained a little weight since the robbery and that his hair was darker. Olson, also, said the model's hair was darker than it had been during the robbery.

After the defense revealed that the man sitting at the counsel table with the defense attorney was a model, the State moved unsuccessfully for a mistrial. When the trial resumed after the hearing on the mistrial motion, defendant sat at the counsel table with his attorney. Defendant's theory of the case was that because he was at Midwest Tire just minutes after the robbery, it was not possible that he committed the robbery. Defendant also presented testimony that the Assistant State's Attorney said to Heideman before she testified, "Now you remember where he's sitting?" and that at the same time the Assistant State's Attorney gestured toward the model. Heideman denied that this had happened.

Defendant also offered testimony that he had been in the Marines 12 to 16 years and had received an honorable discharge. He also stated he had worked as a welder for CECO Steel for 12 years. Defendant's supervisor and Union president testified that defendant had the reputation over the 12 years for being peaceful, law abiding, honest and respectful to other people's property. Defendant is a top welder, earning $21,000 per year. The State offered no evidence of defendant's reputation.

On rebuttal, the State recalled each of the three occurrence witnesses. This part of the trial occurred in a different courtroom than the one in which the State presented this case in chief. The three witnesses testified that the lighting conditions in the first courtroom were worse than those in the second courtroom. All three witnesses identified the defendant as the man who had committed the robbery.

As a result of the circumstances involving the use of a model in this

cause, the trial court had issued a rule on defense counsel to show cause why they should not be held in contempt of court for specified conduct during the trial. The rule to show cause, however, was dismissed by the trial court, and we are not concerned with this matter on appeal in this case.

As we have noted, the only issue before us is whether the evidence presented at the trial was sufficient for the trial judge to find defendant guilty beyond a reasonable doubt of the crime of armed robbery. Normally, the finder of fact is entitled to believe or disbelieve evidence, so long as evidence, as actually presented, raises a reasonable inference of guilt. (*People v. Porter* (3d Dist. 1973), 13 Ill. App. 3d 893, 898, 300 N.E.2d 814, 818.) Where sufficiency of identification is part of the issue, the determination to be made is the question of fact and the trial court's findings will not be upset or set aside on review unless the testimony is so unsatisfactory that it creates a reasonable doubt concerning the guilt of the accused. *People v. Hill* (1st Dist. 1970), 121 Ill. App. 2d 377, 381, 257 N.E.2d 602, 604.

■■ We conclude that there was a sufficient basis for a finding of defendant's guilt beyond a reasonable doubt of the crime of armed robbery in the instant case. Three witnesses saw a gunman enter the Country Mart Grocery Store and take $85 from the cashier. The robber was dressed in blue jeans and a plaid or checkered jacket, with red, gray and black in it. The robber got into the passenger side of a white Midas camper with a Dodge chassis, which bore a license plate number witnesses recorded as 4261RV. About 15 minutes after the robbery a similar white camper with license plate number 42261RV was stopped by a State trooper five miles from the grocery store. Defendant was sitting on the passenger side of the camper wearing blue jeans and a maroon, white and black plaid jacket. A 9 mm pistol was found in the camper.

■ The day following the robbery, two of the occurrence witnesses picked defendant's photograph out of a five-photograph lineup and identified it as a photograph of the robber. The third witness selected the same photograph of defendant out of the same lineup 21 days after the robbery. At defendant's trial, more than 8 months after the robbery, defense hired a model (whose appearance was altered to resemble defendant) to sit at the counsel table with the defense attorneys. All three occurrence witnesses, when asked if the robber was in the courtroom, pointed to the model, but all three said the robber's appearance had changed somewhat since the time of the robbery. They thus expressed some uncertainty about the identification of the model. After the defense revealed that the man sitting at the counsel table was a model, the State recalled its witnesses and this time all of the three positively identified the defendant as the robber. Misidentification of an occurrence witness

during the trial necessarily would affect the credibility of such witnesses and the credibility and weight of the testimony of the witnesses, under such circumstances, is a matter for the trial court in a bench trial and its determination will not be set aside on appeal unless palpably erroneous. (*People v. Arndt* (1972), 50 Ill. 2d 390, 396, 280 N.E.2d 230, 234.) It was obvious that the defense attempted to trick the witnesses into identifying the wrong person, the model (who bore a striking resemblance to defendant and whose appearance was altered to further show the similarity). He sat where a defendant normally sits at a trial. The temporary misidentification which resulted, should not have been unexpected even of careful witnesses who had observed a defendant during the course of a holdup. They expressed some doubt at the time of identification of the model, as not being completely sure of the identification.

Although defense counsel's point about the unreliability of in-court identification has substance, the trial court apparently concluded that no one could reasonably expect a robbery victim to be able to distinguish between the real robber and a model who is made up to resemble the robber. The identity of the defendant was carefully shielded, through a disguise which he wore in the courtroom, until after there was a disclosure of the use of the model by the defense attorney.

In viewing the evidence as a whole, we can only repeat what the Supreme Court of this State has observed in *People v. Neukom* (1959), 16 Ill. 2d 340, 347, 158 N.E. 53, 57, where the court says:

> "A conflict in the evidence does not itself establish a reasonable doubt, and a jury verdict based on credible and substantial evidence is not rendered reversible by the fact that there was other evidence in the case which might, if believed, have resulted in a different verdict."

The same principle would apply where the court acts as a trier of fact instead of a jury.

In view of the evidence presented in the record, and of the opportunity of the trial judge to hear the testimony of the witnesses in court, and to observe the witnesses, we conclude we would not be justified in reversing the findings of the trial court in this cause.

The judgment and sentence of the Circuit Court of Will County in this cause is, therefore, affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.