(No. 52972.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RICKY SKELTON, Appellee.

*Opinion filed December 1, 1980.*

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield, and Charles R. Garnati, State's Attorney, of Marion (Melbourne A. Noel, Jr., Jack Donatelli and Donald B. Mackay, Assistant Attorneys General, of Chicago, and Martin N. Ashley and Gaye Bergschneider, of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

Karen Mumoz, Deputy Defender, of the Office of State Appellate Defender, of Springfield, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Ricky Skelton, was found guilty of armed robbery following a jury trial in the circuit court of Williamson County and was sentenced to 10 years' imprisonment. A divided appellate court reversed, and the cause was remanded to the circuit court with directions to enter a judgment of guilty of robbery and impose an appropriate sentence. (79 Ill. App. 3d 569.) That court found that the toy gun used by the defendant was not a dangerous weapon required for conviction under our armed robbery statute (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a)). We granted the State's petition for leave to appeal. 73 Ill. 2d R. 315.

The robbery of which defendant was convicted occurred around 6:30 p.m. on August 10, 1978, at the Value Store west of Marion. A plastic toy revolver was taken from defendant's waistband when he was found lying on the ground some 300 yards from the store shortly after the robbery. This revolver was introduced into evidence and is before us. Except for the cylinder, it is constructed entirely of hard plastic. The cylinder is a thin, tinny metal. The entire gun is only about 4½ inches in length, and it is quite light in weight. It is similar in appearance to a small-caliber revolver and might well be mistaken for the authentic gun which the witnesses apparently believed it to be. The sole issue before us is whether this toy gun is the "dangerous weapon" required under the statute to support a conviction for armed robbery. That issue is not one upon which any unanimity of opinion exists.

At common law there was no distinction between simple robbery and a robbery accomplished by use of some weapon. Legislative action generally has made the latter the more serious crime, and our criminal laws provide for a greater penalty when a dangerous weapon is used:

"Sec. 18—1. Robbery

(a) A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

(b) Sentence.

Robbery is a Class 2 felony."

"Sec. 18—2. Armed robbery

(a) A person commits armed robbery when he or she violates Section 18—1 while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon.

(b) Sentence.

Armed robbery is a Class X felony." (Ill. Rev. Stat. 1979, ch. 38, pars. 18—1, 18—2.)

(Under our statutory scheme, a Class X felony is subject to substantially more severe penalties.) Effective February

1, 1978, and applicable to this case, the General Assembly had amended the definition of armed robbery in section 18—2(a), which had previously read:

"Sec. 18—2. Armed Robbery

(a) A person commits armed robbery when he violates Section 18—1 while armed with a dangerous weapon." (Ill. Rev. Stat. 1977, ch. 38, par. 18—2(a).)

The intent of the more severe punishment provided in such statutes is, of course, to deter the use of dangerous weapons and prevent the kind of violence that often attends the use of a deadly weapon in the perpetration of a robbery.

There is general agreement that "one who puts his victim in fear by the use of a toy gun or the simulation of a gun may be convicted of unarmed robbery." (Annot., 81 A.L.R.3d 1006, 1010 (1977).) Broadly speaking, however, the authorities which have considered the question whether a toy gun may qualify as a dangerous weapon under the armed or aggravated robbery statutes tend to divide into two groups—those adopting a "subjective" test and those favoring an "objective" rule—neither of which is completely free of logical and practical difficulties in its application. The State urges that we adopt the former, arguing that whether armed robbery has occurred is determined by ascertaining whether the robber intended to instill in the victim the belief and fear that the robber had a dangerous weapon and whether the victim in fact so believed. See Annot., 81 A.L.R.3d 1006, 1027-28 (1977); *People v. Chapman* (1979), 73 Ill. App. 3d 546, 549-50.

The problem with the subjective test when carried to its logical extreme is that the victim may very well believe, and the robber may very well intend that the victim believe, that a dangerous weapon is being used in a robbery when in fact the robber has a finger or some innocuous object in his pocket. Some jurisdictions with statutory

language making the victim's belief or fear relevant have upheld armed robbery convictions for a finger in the pocket. (*State v. Cooper* (1976), 140 N.J. Super. 28, 354 A.2d 713, *rev'd on other grounds* (1979), 165 N.J. Super. 57, 397 A.2d 702.) The superior court there held the statute contemplated punishment based on the victim's perception of the object in defendant's possession, rather than what defendant actually had. Our statute appears to preclude this result, for it provides:

> "Sec. 18—2. Armed Robbery
>
> (a) A person commits armed robbery when he or she violates Section 18—1 [Robbery] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." (Ill. Rev. Stat. 1979, ch. 38, par. 18—2(a).)

A fair reading of this language seems to require something more than a finger in the pocket, and to this extent, at least, it would appear that the legislature has rejected the subjective test. The victim's belief concerning the nature of the weapon does not appear to have been an important factor in our earlier decisions, and the subjective test was disapproved in *People v. Greer* (1977), 53 Ill. App. 3d 675, decided prior to the 1978 amendment. The majority and dissenting opinions in that case contain a review of the Illinois decisions construing the "dangerous weapons" phrase.

There are also logical problems with the objective test proposed by the defendant. That test requires that there be literal compliance with the statute, and asks whether the instrumentality was actually dangerous in the circumstances in which it was used. This standard, however, seems to us to run afoul of logic and common sense in the case where the intended victim is behind bullet-proof glass. Presumably, an armed robbery has occurred if property is actually taken, although even a loaded gun would not be dangerous in such circumstances. Too, the

weight of authority permits application of the armed robbery statute to unloaded guns, a result which has been criticized:

> "The great weight of authority holds that an unloaded pistol, not used as a bludgeon, is nevertheless a dangerous or deadly weapon for armed-robbery purposes. (Some jurisdictions even hold that a toy pistol is such a weapon.) The majority view seems wrong, however: intimidation by some means is a necessary ingredient of simple robbery without violence; something additional in the way of dangerousness is needed for aggravated robbery; but the robber's use of an unloaded (or toy) gun adds nothing extra to the bare fact that he intimidated the victim." (Footnotes omitted.) (W. LaFave and A. Scott, Criminal Law sec. 94, at 703 (1972).)

In a footnote, LaFave and Scott add:

> "Perhaps another way to express the matter is this: the greater punishment is awarded for armed robbery so as to deter the dangerous person who is actually capable of inflicting death or serious bodily harm. The robber with the unloaded or toy gun is not nice—is guilty in fact of (simple) robbery—but he is not the dangerous type for whom the greater penalty is reserved." W. LaFave and A. Scott, Criminal Law sec. 94, at 703 n.67 (1972).

We agree that "something additional in the way of dangerousness is needed" for armed robbery. Our statute requires that "something" to be a dangerous weapon. Despite the quoted material, however, we believe a weapon can be dangerous, even though used in a manner for which it was not designed or intended. Thus, a rifle or shotgun, whether loaded or not, may be used as a club with devastating effect. Similarly, a handgun, when gripped by the barrel and used as a bludgeon, is equally dangerous whether loaded or unloaded. It is, at least in part, for these reasons that application of the armed robbery statute has been permitted even when the firearm used is unloaded. See Annot., 79 A.L.R.2d 1412, 1426 (1961); Note, *An Unloaded and Unworkable Pistol as a Dangerous*

*Weapon When Used in a Robbery,* 32 La. L. Rev. 158, 160 (1971) (based upon public policy, any pistol used in a robbery is a dangerous weapon as a matter of law); *People v. Manzardo* (1980), 87 Ill. App. 3d 129, 132.

This issue was first addressed by this court in *People v. Dwyer* (1927), 324 Ill. 363, where it was noted that some weapons such as a pistol are deadly *per se* and thus as a matter of law satisfy the statutory requirement for armed robbery. An object not deadly *per se* may still be a dangerous weapon because of its capacity to inflict serious harm even though not designed for that purpose, as in the case of a baseball bat. Thus, we held in *People v. Robinson* (1978), 73 Ill. 2d 192, that an ordinary nail clipper containing a pointed fingernail file could be found by the jury to be a dangerous weapon. Similarly, our appellate court has held an unloaded air pistol (*People v. Hill* (1977), 47 Ill. App. 3d 976), an apparently unloaded gas pellet pistol (*People v. Greer* (1977), 53 Ill. App. 3d 675), and .22-caliber starter pistols (*People v. Ratliff* (1974), 22 Ill. App. 3d 106; *People v. Trice* (1970), 127 Ill. App. 2d 310) could all be found to be dangerous weapons.

There are policy considerations to be weighed which have been well stated in *Greer*:

"On the one hand, to require the State to prove that a firearm used to commit a robbery was loaded and operable would greatly restrict the applicability of the armed robbery statute. Under such a requirement, a defendant could be convicted of armed robbery only if he were apprehended at the scene of the crime or immediately thereafter with the loaded and operable gun in his possession, or if the gun itself were discovered, identified, and found to be loaded and operable, or if the defendant actually fired the weapon. On the other hand, it would be illogical and, perhaps,

> unfair to convict a person of robbery 'while armed with a dangerous weapon' in the face of evidence indicating that his weapon was, in fact, not dangerous." 53 Ill. App. 3d 675, 682.

We believe, however, that these concerns are not irreconcilable. As we earlier noted, many objects, including guns, can be dangerous and cause serious injury, even when used in a fashion for which they were not intended. Most, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as bludgeons. Since the robbery victim could be quite badly hurt or even killed by such weapons if used in that fashion, it seems to us they can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense. It suffices that the potential for such use is present; the victim need not provoke its actual use in such manner.

In the great majority of cases it becomes a question for the fact finder whether the particular object was sufficiently susceptible to use in a manner likely to cause serious injury to qualify as a dangerous weapon. Where, however, the character of the weapon is such as to admit of only one conclusion, the question becomes one of law for the court. (*People v. Robinson* (1978), 73 Ill. 2d 192, 202; *People v. Dwyer* (1927), 324 Ill. 363, 365.) The toy gun in this case, in our judgment, falls into the latter category. It does not fire blank shells or give off a flash as did the starter pistols in *Ratliff* and *Trice*; it is entirely too small and light in weight to be effectively used as a bludgeon as could the metal air pistol in *Hill*; it fires no pellets as did the gas pellet pistol in *Greer*; and, except that it could, conceivably, be used to poke the victim in the eye (and a finger could be used for that purpose), it is harmless. It simply is not, in our opinion, the type of weapon which can be used to cause the additional violence and harm which the greater penalty attached to armed

robbery was designed to deter.

The appellate court correctly held defendant could not be found guilty of armed robbery. Its judgment reversing and remanding for entry of judgment and sentence on simple robbery is affirmed.

*Judgment affirmed.*