THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID BAYLESS, Defendant-Appellant.

Third District    No. 81-86

Opinion filed August 21, 1981.

Robert Agostinelli and Bonita L. Welch, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Following a bench trial the defendant, David Bayless, was convicted of armed robbery. (Ill. Rev. Stat. 1979, ch. 38, par. 18—2.) He was sentenced to a term of eight years imprisonment. On appeal, the defendant contends that he was not proven guilty beyond a reasonable doubt, because the State's sole identification witness allegedly did not see the face of the perpetrator of the crime, the credibility of the witness was impeached, and the State failed to establish that the witness' in-court identification of the defendant had an origin independent of the impermissibly suggestive scene at the defendant's arrest. In addition, the defendant contends that his conviction for armed robbery must be reversed or reduced to simple robbery, since the State failed to prove that the defendant possessed a dangerous weapon at the time of the offense. Finally, the defendant contends that the armed robbery statute is unconstitutional. We affirm.

The following pertinent evidence was adduced at trial. Virgil Thompson, the victim, testified that he drank about three beers after work on August 23, 1980, and went to bed around 10 p.m. About 3 a.m. the following morning he awoke and went outside for a walk. While passing through an alley near his hotel, he took out his wallet to look for something. A black male, approximately 5′11″ tall and wearing a white straw hat, approached him and asked, "What are you doing, counting your money?" Thompson replied, "I wish I had some to count." The man then reached into his back pocket, pulled a "gun," and pointed it at Thompson and said: "Drop it and run." Thompson did as he was told.

The victim testified that at the time of the armed robbery, the black male was eight or nine feet in front of him. The alley was illuminated by lights from a nearby parking lot and from the street, with the nearest light being some 45 to 50 feet away.

Thompson also testified that he and the armed robber faced each other throughout the 15-second exchange. When asked by the prosecutor whether he was able to look at the perpetrator and to see who it was, the victim replied: "I didn't know the person—who the person was at that time. That was the first time I saw him."

After Thompson dropped his wallet and ran out of the alley, he located a State trooper, who unsuccessfully assisted the victim in his search for the armed robber. After cruising around the area for five minutes, the trooper dropped Thompson off, and the victim walked down the alley in which he had been robbed. He found his wallet near the parking lot.

Looking down the alley again, Thompson spotted the black man in the white straw hat. The victim ran to the city police department, found an officer and reported that he had been robbed by an armed black man wearing a white straw hat and a black shirt. Thompson sat in the back seat of the officer's car while they drove through the alley to the rear of Barrett's Hardware Store. When they arrived, other officers already had the defendant in custody. As one of the arresting officers held up the defendant's toy gun, the victim yelled: "That's him, that's him, the straw hat, that's him." The site of the defendant's arrest was about one block from the scene of the armed robbery.

During cross-examination, Thompson testified as follows concerning his identification of the defendant:

> "Q [Defense counsel]: Now, Mr. Thompson, during your direct-examination, you sat in court here and pointed to my client, David Bayless, and you said that this was the man who had made you drop your wallet in the alley, isn't that what you testified to?
>
> A. That's true.
>
> Q. Now, I want to ask you a few questions about that. First of all, isn't it true that when you were in Officer Klepfer's squad car and pulled in behind the alley at Barrett's that the way that you identified David Bayless is because you said something to the effect, That's him, that's the straw hat right there, isn't it?
>
> A. Right.
>
> Q. Now, at that time, you didn't know what David Bayless looked like, did you? All you knew was that there was a straw hat that was similar to the one you—
>
> MR. MILLER: Objection, Judge, that's two questions.
>
> THE COURT: Put one at a time.
>
> MR. McSHERRY: Okay, it's true, is it not, Mr. Thompson, that you identified that person that was in the custody of Officer Pederson by the straw hat, isn't it?
>
> A. Yes, this is true.
>
> Q. All right, now, so, you can't really sit in this courtroom, today, and say this is the man that had the gun in the alley, can you?
>
> A. Yes, sir, I can.
>
> Q. So, in other words, you're telling me that you remember this

man's face from the encounter in the alley, is that what you're saying?

A. Yes, and I pointed out a couple other things before the officer I was with got there."

In denying the defendant's motion for a directed finding of not guilty at the close of the State's case, the trial court noted that there was evidence that the victim identified the defendant by recollection of the defendant's facial features, as well as by his hat. Later, upon pronouncing the defendant guilty, the trial judge remarked that the victim recognized the defendant from his face.

The defendant now asserts that the State failed to prove his identity as the armed robber beyond a reasonable doubt. He bases this assertion on a claim that Virgil Thompson did not see the face of the armed robber and that identification of the defendant by his straw hat is insufficient. In addition, the defendant attacks the credibility of Virgil Thompson as a trustworthy witness and asserts that the State failed to establish that Thompson's in-court identification of the defendant had an origin independent of the arrest scene identification.

■■■ While it is true that a positive identification by a single witness who had an adequate opportunity to observe the offender is sufficient to support a conviction (*People v. Berry* (1980), 86 Ill. App. 3d 755, 408 N.E.2d 466), that witness must be credible and the circumstances under which the witness observed the defendant must be such as to permit a positive identification. (*People v. Versher* (1977), 52 Ill. App. 3d 148, 367 N.E.2d 311.) Any discrepancies in the witness' description of the offender and the appearance of the defendant are to be evaluated by the trier of fact, whose determination will not be overturned by a reviewing court unless it is so contrary to the evidence as to be unjustified. *People v. Milam* (1980), 80 Ill. App. 3d 245, 399 N.E.2d 703.

■■ In the case at bar, the complaining witness testified that he faced the armed robber face-to-face for a period of approximately 15 seconds in an alleyway illuminated by street lights some 45 to 50 feet away. The victim testified that the 15-second encounter was the first time he had seen the defendant. Because the defendant was dressed in a white straw hat, the victim particularly noticed that item of apparel. When the victim later saw the defendant at the time of the defendant's arrest, he first identified him by the white straw hat he was wearing and the silver gun which was confiscated from the defendant's pocket. However, when the victim approached the defendant, he was able to identify him as the armed robber by his facial features. We believe the opportunity afforded to the victim to observe the defendant was adequate to permit a positive identification.

■■■ Some discrepancies in the victim's description of the defendant's

clothing are apparent from the record. When Virgil Thompson first reported the incident to the police, he correctly described the defendant's clothing as a white straw hat and a black shirt. At trial, Thompson testified that the defendant wore a straw hat and a sport coat. This minor discrepancy does not destroy the credibility of the witness but only bears on the weight of his testimony. (*People v. Villalobos* (1979), 78 Ill. App. 3d 6, 396 N.E.2d 1081.) In like manner the victim's statement to a defense counsel investigator that all blacks look alike to him does not destroy Thompson's credibility but only goes to the weight of his testimony. The trial judge, as the trier of fact in the present case, considered these factors in weighing the evidence presented. We decline to substitute our judgment for his, since he was in a superior position to assess the truthfulness and credibility of the complaining witness who appeared before him in open court.

Virgil Thompson's credibility as a witness is further attacked by the defendant on the basis that Thompson had been convicted of both burglary and theft. While this is true, it does not alter the fact that Thompson made a positive identification of the defendant as the armed robber. Nor does Thompson's account of the futile search for the armed robber in the company of a State policeman destroy his credibility. Unless palpably erroneous, the determinations made by the trier of fact concerning the credibility of a witness will not be set aside on appeal. (*People v. Gow* (1978), 65 Ill. App. 3d 723, 382 N.E.2d 673.) In the instant case, the trial court's determinations were clearly not palpably erroneous.

Finally, we reject the defendant's contention that Thompson's identification of the defendant must be discounted because the State failed to show that it originated independently of the victim's identification of the defendant at the arrest scene. It is clear from the record that the victim's identification of the defendant as the armed robber was based on the original 15-second incident in the alleyway.

■■ The defendant also argues that his conviction of armed robbery must be reversed or reduced to simple robbery because the State failed to establish that he possessed a dangerous weapon at the time of the offense. We disagree.

The defendant was armed with a metal, toy cap-gun, silver in color except for the brown plastic grips around the handle. The gun weighed 5.88 ounces and was approximately five inches long. In appearance, the cap gun was very similar to a snub-nose .38-caliber pistol. The trial judge found the gun to be a dangerous weapon as a matter of law, because of its weight, the metal sight on the barrel and the metal hammer. Clearly it could be used as a bludgeon to inflict serious harm to an individual struck about the head or face.

The leading Illinois case on what constitutes a dangerous weapon for

purposes of the armed robbery statute is *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455. In *Skelton*, the Illinois Supreme Court determined that a toy gun, approximately 4½ inches long and constructed out of hard plastic except for a thin, tiny metal cylinder was not a dangerous weapon. (83 Ill. 2d 58, 66, 414 N.E.2d 455, 458.) In reaching this decision, the court noted:

> "⁕ ⁕ ⁕ [M]any objects, including guns, can be dangerous and cause serious injury, even when used in a fashion for which they were not intended. Most, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as bludgeons. Since the robbery victim could be quite badly hurt or even killed by such weapons if used in that fashion, it seems to us they can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense. It suffices that the potential for such use is present; the victim need not provoke its actual use in such manner.
>
> In the great majority of cases it becomes a question for the fact finder whether the particular object was sufficiently susceptible to use in a manner likely to cause serious injury to qualify as a dangerous weapon. Where, however, the character of the weapon is such as to admit of only one conclusion, the question becomes one of law for the court. (*People v. Robinson* (1978), 73 Ill. 2d 192, 202; *People v. Dwyer* (1927), 324 Ill. 363, 365.)" *People v. Skelton* (1980), 83 Ill. 2d 58, 66, 414 N.E.2d 455, 458.

The weapon used in the instant case has been included in the record on appeal. An examination of the weapon reveals that the trial court's characterization of the gun as a dangerous weapon was not manifestly erroneous. The shape, size, weight and composition of the toy gun makes it capable of inflicting serious bodily harm, particularly if used to batter the head and face of a victim. Accordingly, we decline to alter the trial court's finding that the toy gun is a dangerous weapon.

■■ The defendant's final argument is that the armed robbery statute is unconstitutional as applied to him, because it is too vague to warn him that a dangerous weapon includes an object weighing 5.88 ounces. We find the defendant's argument unpersuasive. As the United States Supreme Court stated in *Jordan v. DeGeorge* (1951), 341 U.S. 223, 230-32, 95 L. Ed. 886, 892, 71 S. Ct. 703, 707-08:

> "The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct. *Williams v. United States*, 341 U.S. 97, ante, 774, 71 S. Ct. 576, decided April 23, 1951; *Screws v. United States*, 325 U.S. 91, 103, 104, 89 L. Ed. 1495, 1503, 1504, 65 S. Ct. 1031, 162 ALR 1330 (1945).

This Court has repeatedly stated that criminal statutes which fail to give due notice that an act has been made criminal before it is done are unconstitutional deprivations of due process of law. *Lanzetta v. New Jersey*, 306 U.S. 451, 83 L. Ed. 888, 59 S. Ct. 618 (1939); *United States v. Cohen Grocery Co*. 255 U.S. 81, 65 L. Ed. 516, 41 S. Ct. 298, 14 ALR 1045 (1921).

\* \* \*

We have several times held that difficulty in determining whether certain marginal offenses are within the meaning of the language under attack as vague does not automatically render a statute unconstitutional for indefiniteness. *United States v. Wurzbach*, 280 U.S. 396, 399, 74 L. Ed. 508, 510, 50 S. Ct. 167 (1930). Impossible standards of specificity are not required. *United States v. Petrillo*, 332 U.S. 1, 91 L. Ed. 1877, 67 S. Ct. 1538 (1947). The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Connally v. General Constr. Co*. 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126 (1926)."

Applying this test to the Illinois armed robbery statute, it is clear that it is constitutional as applied to the present defendant. (See Ill. Rev. Stat. 1979, ch. 38, par. 18—2.) Section 18—2 gave notice to the defendant that if he were to commit a robbery while armed with a weapon which could cause serious harm to his victim, he would be guilty of violating the armed-robbery statute. It was not necessary nor is it feasible for the legislature to list every conceivable weapon that might be used as a dangerous weapon. The defendant, holding the toy gun made almost entirely of metal and having numerous corners capable of inflicting injury and causing pain, cannot now be heard to complain that the weapon was not dangerous. The armed robbery statute is not unconstitutional as applied to this defendant.

For the foregoing reasons, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

SCOTT, P. J., and BARRY, J., concur.