# Illinois Official Reports

## Appellate Court

*People v. Fletcher*, 2017 IL App (3d) 140530

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEXANDER FLETCHER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0530 |
| Filed<br>Rehearing denied | April 13, 2017<br>May 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 11-CF-1285; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Mark D. Fisher, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Dawn D. Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Wright dissented, with opinion. |

**OPINION**

¶ 1    Following a bench trial, the trial court found defendant, Alexander Fletcher, guilty of armed robbery, a Class X felony. The court sentenced defendant to 21 years' imprisonment—the 6-year minimum plus the 15-year statutory firearm enhancement. On appeal, defendant argues (1) his conviction should be vacated because the record does not show that he knowingly and understandingly waived his right to a jury trial, and (2) the State failed to prove him guilty beyond a reasonable doubt of armed robbery with a firearm. We vacate defendant's conviction and remand for a new trial.

¶ 2                                    FACTS

¶ 3    On July 14, 2011, the State charged defendant by indictment with armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)). The indictment was based on a theory of accountability and alleged that defendant, along with Aaron Anderson, knowingly took United States currency from the person of Jacob McNamara by threatening the use of force while carrying a firearm.

¶ 4    In a separate case not before this court, the State charged defendant with attempted armed robbery. On April 29, 2013, defendant entered a guilty plea in the attempted armed robbery case. The trial court admonished defendant of his right to a jury trial and defendant agreed to waive that right. The instant case was set for a jury trial on October 1, 2013. On August 12, 2013, defense counsel informed the court that defendant's attempted armed robbery case was set for sentencing that day. With regard to the status of the instant case, defense counsel stated, "It is also bench, Judge. We waived." From that point on, all references were to a bench trial. The record on appeal does not contain a written jury waiver in the instant case.

¶ 5    On October 29, 2013, the State filed a notice of intent to enhance sentencing upon conviction pursuant to section 111-3(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(c) (West 2010)). The State intended to seek a 15-year sentencing enhancement upon defendant's conviction under count I for possessing a firearm during the commission of the offense.

¶ 6    A bench trial began on February 7, 2014. The trial judge received testimony from Jacob McNamara concerning events that took place on July 2, 2011. McNamara explained that on July 2, 2011, at approximately 1 a.m., he stopped his vehicle at a Chase Bank automated teller machine (ATM) located in Frankfort, Illinois. At that time, McNamara spotted a silver sports utility vehicle (SUV) in the nearby parking lot. As McNamara finished his ATM transaction, someone stuck a black revolver in the window of his vehicle on the driver's side. McNamara first saw the gun when the assailant pointed it at his face about a foot away for at least a minute. McNamara stated that he knew the gun was a revolver because he saw a cylinder.

¶ 7    McNamara described the person who approached the car as a heavier set black male wearing a white T-shirt with another white T-shirt wrapped around his face. The person had longer hair, dreads or braids of some sort. The man took McNamara's money, ATM card, and pin number.

¶ 8    McNamara stated that as he left the parking lot, the same man stood in front of his car, again pointed the gun at him, and demanded his cell phone before stating, "Don't make me kill you." McNamara complied. As he drove away, McNamara noticed that two people were

seated in the silver SUV and the vehicle had no front license plate. McNamara did not describe the appearance of the second occupant of the silver SUV.

¶ 9 The State called Kevin Johnson, a police detective for the village of Frankfort police department, as its next witness. Johnson testified that on July 3, 2011, he was assigned to investigate an incident that occurred on July 2, 2011. Johnson testified that he learned the facts of the case from Jacob McNamara. McNamara told Johnson he had been robbed on July 2, 2011, at the Chase Bank in Frankfort, Illinois. Johnson described a black male weighing approximately 200 pounds, wearing a white T-shirt, blue jeans, and tan boots. According to Johnson, still images from the ATM security camera corroborated McNamara's physical description of the man that approached him at the ATM. McNamara told Johnson the assailants drove a silver SUV, possibly a Toyota. Based on this description, Johnson put out a "critical reach flier." The flier contained information about the date and nature of the incident, along with vehicle and suspect information.

¶ 10 Greg Selin, an investigator for the Mokena police department, testified that on July 5, 2011, he, along with Detective Jeff Kowalczyk, had an opportunity to interview defendant about an armed robbery that took place on July 5, 2011. During this conversation, defendant admitted that he drove his silver Toyota to the Chase Bank in Mokena, Illinois, during the early morning hours of July 5, 2011. Once a car pulled up to the ATM, defendant said he approached the car intending to take money from the occupants. Defendant admitted that as he approached the woman in the car, he possessed a gun he had obtained from Chicago earlier that day. According to defendant, he held the gun down at his side, opened the back door of the car, but "froze up" when the females inside the car began screaming. As the car drove away, defendant ran back to his car parked in a nearby parking lot.

¶ 11 Following the interview by the Mokena investigators, officers from Frankfort interviewed defendant about both the July 5, 2011, incident at the Chase Bank in Mokena and the July 2, 2011, incident at the Chase Bank in Frankfort. At first, defendant denied knowledge of the Frankfort robbery. The detectives then explained that an armed robbery had taken place on July 2, 2011, in Frankfort. The detectives advised defendant they had a videotape of his car parked at the Chase Bank close in time to the armed robbery.

¶ 12 The detectives also explained that the armed robbery was caught on videotape and that they were confident defendant did not approach the victim on July 2, 2011; the man that approached the victim was much larger than defendant and heavily tattooed. However, the detectives had a video from the security camera at the bank that clearly showed the heavyset gunman was carrying defendant's gun on July 2, 2011. Defendant did not respond to the detectives' comment about the armed robber possessing defendant's firearm on July 2, 2011. However, defendant did admit that he and Anderson had robbed a person on July 2, 2011, in Frankfort.

¶ 13 Next, Chris Carlson, an officer with the Mokena police department, testified. Carlson testified that on July 5, 2011, at approximately midnight, he observed a silver SUV that pulled into the JC Penney's parking lot. After the vehicle left the parking lot on July 5, 2011, Carlson received a dispatch of an armed robbery that had just occurred at the Chase Bank in the same parking lot complex. Upon speaking with the victims at the Chase Bank, Carlson learned the assailants were driving either a white or light-colored SUV. At this point, Carlson was informed that New Lenox police officers had stopped a vehicle matching the description. Carlson drove to the scene and observed a silver SUV with three people outside of the vehicle. Upon a search of the vehicle, Carlson discovered a .38-special revolver.

¶ 14 Before the State rested, exhibits Nos. 1, 2, and 3 were admitted as part of the State's case-in-chief. These exhibits include a DVD of defendant's interview in Frankfort, a DVD of defendant's interview in Mokena, and defendant's constitutional rights waiver.

¶ 15 After the State rested, defense counsel made a motion for a directed verdict and argued that even taking the case in the light most favorable to the State, the State failed to prove the "armed nature of the allegation." The court denied the request for a directed finding and denied the request to consider defendant's guilt on an uncharged offense. Defendant presented no witnesses.

¶ 16 During closing, defense counsel requested that the trial judge consider a charge under section 18-2(a)(1) of the armed robbery statute, as the firearm had not been proven (720 ILCS 5/18-2(a)(1) (West 2010)). Alternatively, defense counsel argued the court should consider the lesser-included charge of robbery (720 ILCS 5/18-1 (West 2010)). The trial court found defendant guilty of armed robbery with a firearm as charged in the indictment.

¶ 17 Defendant filed a motion for a new trial on May 14, 2014, arguing, *inter alia*, he was not proven guilty of aggravated robbery beyond a reasonable doubt. The trial court denied defendant's motion.

¶ 18 The parties held extensive argument at sentencing as reflected in approximately 110 pages of the record on appeal. Again, defense counsel argued the State failed to prove beyond a reasonable doubt that defendant, or his codefendant, possessed a firearm on the night of the robbery. Defense counsel argued that defendant should be sentenced under section 18-2(a)(1) or robbery. After substantial consideration, the trial judge expressed displeasure concerning the mandatory enhanced sentencing scheme required by statute, but, nonetheless, sentenced defendant to a minimum period of incarceration of 6 years plus a mandatory 15-year firearm enhancement for a sentence of 21 years' imprisonment.

¶ 19 Defendant filed a timely notice of appeal on June 9, 2014.

¶ 20                              ANALYSIS
¶ 21                            I. Jury Waiver
¶ 22 On appeal, defendant first argues this court should reverse his conviction and remand for a new trial because the record does not show that he knowingly and understandingly waived his right to a jury trial. The State concedes this issue. For the following reasons, we accept the State's concession.

¶ 23 Both the United States and Illinois Constitutions afford a defendant in a criminal case the fundamental right to trial by jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Pursuant to Illinois law, a defendant who wishes to waive his right to a jury trial must do so in writing, understandingly, and in open court. 725 ILCS 5/115-1, 103-6 (West 2010). However the absence of a written jury waiver does not require a remand for a new trial "so long as the defendant's waiver was made understandingly in accordance with section 103-6." *People v. Tooles*, 177 Ill. 2d 462, 468 (1997). The validity of a jury waiver cannot rest on any precise formula, but, rather, "depends on the facts and circumstances of each particular case. [Citation.] A jury waiver may be valid if it is made by defense counsel in the defendant's presence and the defendant does not object." *In re R.A.B.*, 197 Ill. 2d 358, 364 (2001).

¶ 24 Here, the record contains no evidence that defendant waived his right to a jury trial either in writing or in open court. The only reference to a jury waiver is defense counsel's statement at

defendant's sentencing hearing in a separate case that, "It is also bench, Judge. We waived." Although defendant was present in open court when defense counsel made this statement, we find the statement insufficient to constitute an understanding waiver on the part of defendant. Putting the statement in context, it appears that counsel was operating under the mistaken belief that defendant had previously waived his right to a jury trial in the instant matter. However, the record contains no hearing transcript in which defendant waived a jury trial nor do the court's docket entries reflect any such waiver. Accordingly, we accept the State's concession and remand for a new trial.

¶ 25                              II. Sufficiency of the Evidence

¶ 26      Given that we are remanding for a new trial, defendant next argues that the evidence presented below was insufficient to support his conviction for armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)). Should we agree with his contention, defendant requests that his new trial be on the lesser uncharged offense of robbery (720 ILCS 5/18-1 (West 2010)).

¶ 27      Under the armed robbery statute, the State was required to prove beyond a reasonable doubt that defendant, or one for whom he was legally accountable, knowingly took property by the use or threat of force while armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2010). "Firearm" is defined in section 1.1 of the Firearm Owners Identification Card Act as follows:

> " 'Firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however:
>
>> (1) any pneumatic gun, spring gun, paint ball gun or BB gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;
>>
>> (2) any device used exclusively for signaling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;
>>
>> (3) any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition; and
>>
>> (4) an antique firearm (other than a machine-gun) which, although designed as a weapon, the Department of State Police finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." 430 ILCS 65/1.1 (West 2010).

¶ 28      The presence of a firearm in an armed robbery prosecution is a question of fact for the jury. *People v. Clark*, 2015 IL App (3d) 140036, ¶ 24. "The State does not have to prove the gun is a firearm [within the meaning of the statutory definition] by direct or physical evidence; unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant was armed during a robbery." *People v. Wright*, 2015 IL App (1st) 123496, ¶ 74.

¶ 29      Here, McNamara testified that on July 2, 2011, he stopped his vehicle at a Chase ATM in Frankfort. As he was finishing his ATM transaction, a black man wearing a white T-shirt walked to his car window and pointed a black revolver at him. The man demanded money, his

ATM card, and pin number. McNamara gave the man what he asked for. As McNamara began to leave, the same man stepped in front of his car, again "pointed the gun at him," and told McNamara to give him his cell phone and stated, "Don't make me kill you." McNamara identified the vehicle the man got into as a silver SUV and stated that he saw two other people in the vehicle.

¶ 30    We find the evidence sufficient to convict defendant of armed robbery. The fact that the victim could not identify the recovered handgun as the one pointed at him is of no moment. Accordingly, there will be no double jeopardy concerns surrounding defendant's retrial. *In re R.A.B.*, 197 Ill. 2d at 369.

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, we vacate defendant's conviction in the circuit court of Will County and remand for a new trial on the armed robbery charge.

¶ 33    Vacated and remanded.

¶ 34    JUSTICE WRIGHT, dissenting.

¶ 35    I respectfully disagree that the State presented sufficient evidence at trial to support defendant's conviction for armed robbery with a firearm. For this reason, I would allow defendant's request to reverse his conviction for armed robbery and remand the matter for resentencing on the lesser-included offense of robbery. This is consistent with the approach utilized by this court under similar circumstances in *People v. Fiala*, 85 Ill. App. 3d 397 (1980), wherein this court reduced the defendant's conviction from armed robbery to robbery under the authority of Illinois Supreme Court Rule 615(b)(3).

¶ 36    I do not take issue with the majority's assertion that the State is *not* required to introduce a firearm into evidence in order to sustain their burden of proof that the object displayed by a robber was, in fact, a firearm beyond a reasonable doubt. However, in this single eyewitness case, the victim's testimony is uncorroborated with respect to the use of an actual firearm. During direct examination, the victim did not provide a detailed description of the object held by the gunman that would enable the trier of fact to conclude the victim correctly perceived the object was an actual firearm. Moreover, although defendant provided two interviews to the police, the interrogating officers did not ask defendant if his accomplice had a firearm on the night of the Frankfort robbery. In addition, defendant did not admit a firearm was present in the car on the night McNamara drove up to the ATM in Frankfort. Finally, no still photographs of the robber carrying any object or leaning into the victim's car were introduced into evidence. Although the State's evidence established defendant possessed a firearm several days later, this particular firearm was never linked to the robbery in Frankfort.

¶ 37    The majority relies on *People v. Wright*, 2015 IL App (1st) 123496, where the State presented testimony of *three* occurrence eyewitnesses. *Id.* ¶ 76. One witness in *Wright* testified "he felt the barrel of the gun as codefendant pressed it into his back" and was " '100% sure' " that the object was " 'an actual firearm' as he had seen guns before." *Id.* Another witness in *Wright* testified that "he had seen guns before and that he believed that codefendant's gun was a '9 millimeter pistol.' " *Id.* A third occurrence witness corroborated the other witnesses by testifying that she also saw a gun in the offender's waistband. *Id.* In *Wright*, even though a

- 6 -

firearm was not introduced as part of the State's case, the reviewing court upheld the armed robbery conviction due to the testimony of the witnesses which the reviewing court described as "unequivocal." *Id.* ¶¶ 74-75.

¶ 38    I respectfully disagree that *Wright* is controlling in the case at bar. In *Wright*, three occurrence witnesses testified about the firearm they observed. Unlike *Wright*, the single eyewitness's testimony in this case was not "unequivocal" as commonly defined. According to Black's Law Dictionary, unequivocal, combined with a reference to the burden of proof, "implies proof of the highest possible character and it imports proof of the nature of mathematical certainty." Black's Law Dictionary 1528 (6th ed. 1990).

¶ 39    In *Wright*, I agree the victim's testimony fits this definition because the victim in that case felt the barrel of the gun and testified that he was 100% certain the object was an actual firearm. I also agree the evidence was sufficient to prove the elements of armed robbery in *Wright*. However, the victim's testimony in this case, with reference to the object carried by the robber, was far less detailed and not unequivocal, as in *Wright*.

¶ 40    For example, the prosecutor in the case at bar did not ask the victim whether he was certain the object was an actual firearm, other than a facsimile of a firearm, during direct examination. The victim did not volunteer any information about his level of certainty about the presence of a firearm. Further, the prosecutor did not ask the victim to describe the characteristics of the object or to indicate whether the victim had any familiarity with the appearance of firearms as a foundation for his testimony. Although the victim agreed with the prosecutor's description of the weapon as a revolver, the victim did not disclose whether he understood what a revolver might look like. Based solely on the lackluster direct examination of the victim, I conclude the victim's testimony cannot be fairly described as "unequivocal" and distinguish *Wright* on this basis.

¶ 41    The majority has not pointed to any published decision where the State obtained a conviction for armed robbery under circumstances similar to this case involving an uncorroborated eyewitness account from a single occurrence witness where the offender did not confess to possessing a firearm and the State did not introduce the firearm into evidence. There is a point where the evidence will support a suspicion that the robber was armed with a firearm but fails to establish this element beyond a reasonable doubt as required to add *15 years* to defendant's sentence. This is such a case.

¶ 42    The decision that comes closest to the facts in the case at bar appears to be *People v. Malone*, 2012 IL App (1st) 110517, where the prosecution did not introduce a firearm into evidence and only a single eyewitness testified about the robbery. However, in *Malone*, the details provided by the single eyewitness's testimony was strongly corroborated by video footage depicting the firearm itself for the trier of fact to evaluate. *Id.* ¶ 41.

¶ 43    In the case at bar, during Officer Johnson's testimony before the court, the officer makes reference to a still photograph obtained from the ATM's camera at the Frankfort bank. The officer stated the still photograph was used to help police identify the robber, who was not defendant. However, in spite of the presence of a camera that captured an image of the robber, the prosecution did not introduce any still photograph of the robber holding a firearm as described by the victim or leaning into the victim's car window. As stated above, it is significant to my point of view that the DVD which depicted defendant's confession does not contain any admission or discussion of the use of a firearm or other object as part of the robbery at the ATM in Frankfort.

¶ 44 Further, during his testimony, the victim in this case described the assailant's physical characteristics in great detail but failed to provide a detailed description of the purported revolver other than describing the color as black. The victim did not volunteer any details about the object held by the assailant such as whether the object appeared to be metallic or plastic, large or small, and did not describe the shape of the weapon other than answering a leading question about a cylinder on the object. The victim in this case never touched the object in question like the victim in *Wright* or the victim in *People v. Toy*, 407 Ill. App. 3d 272 (2011). In *Toy*, the victim testified that defendant threatened to kill her and the victim had the opportunity to feel the object pressed against her head which caused her to conclude the object was in fact an actual firearm. *Id*. at 289.

¶ 45 The case law is replete with examples of objects used during other robberies that look like guns but are not actual firearms, such as B.B. guns, toy guns, *inter alia*. *People v. Dixon*, 2015 IL App (1st) 133303; *People v. Thorne*, 352 Ill. App. 3d 1062 (2004); *People v. Skelton*, 83 Ill. 2d 58 (1980); *People v. Hill*, 47 Ill. App. 3d 976 (1977).

¶ 46 Finally, the State proved defendant possessed a .38-caliber weapon three days *after* the Frankfort robbery, and this evidence was undisputed by the defense. However, in *Fiala*, this court had an opportunity to consider the relevance of similar evidence proving the defendant in *Fiala* possessed a firearm *after* the robbery at issue. This court concluded the possession of a firearm *after* the robbery did not establish the firearm was in defendant's possession at the time of the robbery beyond a reasonable doubt. *Fiala*, 85 Ill. App. 3d at 400-02.

¶ 47 Consequently, based on the rationale of *Fiala*, I conclude this other crimes evidence contributed nothing to the State's burden of proof concerning the presence of a firearm days earlier when the Frankfort robbery took place. This is not to say the State could not have linked the .38-caliber weapon to the Frankfort robbery by presenting the weapon to the victim during the victim's direct examination. However, in this case, the State did not make any attempt to link the .38-caliber handgun retrieved days later to the Frankfort robbery. Thus, the holding in *Fiala* causes me to conclude that defendant's constructive possession of a .38-caliber handgun *after* the robbery should not be considered as circumstantial evidence that the same gun was used during the Frankfort robbery days before.

¶ 48 I recognize this is a very serious crime and the majority provides a sound analysis. However, based on the unique record in this case and the prosecution's approach, I respectfully disagree with the majority's conclusion that the State's evidence was sufficient to support the armed robbery conviction even when viewed in the light most favorable to the State. Therefore, I would remand the matter for resentencing on the lesser-included offense of robbery. I will not address defendant's challenge to the constitutionality of the 15-year firearm enhancement. Further, I note that defendant would have an opportunity to request the application of the $5 *per diem* credit to offset the fines, if any, imposed by the court on remand.

¶ 49 For these reasons, I respectfully dissent.