(No. 50154.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JACKIE ROBINSON, Appellant.

*Opinion filed October 6, 1978.*

Ronald L. Carpel, of Decatur, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay and Gerri Papushkewych, Assistant Attorneys General, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Macon County, defendant, Jackie Robinson, was convicted of rape, armed robbery and two counts of deviate sexual assault. He was sentenced to concurrent terms of 30 to 50 years on each of the four convictions. The appellate court affirmed (52 Ill. App. 3d 658), and we granted leave to appeal.

Defendant contends that (1) he was substantially prejudiced by the admission of hearsay evidence to which no objection was made; (2) the jury was improperly instructed; (3) the evidence is insufficient to prove he committed a robbery while armed with a dangerous weapon; (4) his trial counsel was incompetent; and (5) his sentences are excessive. We affirm defendant's convictions and sentences.

The complainant, who testified as the State's last witness, indicated that on the evening of November 4, 1975, she met three girl friends at a Decatur nightclub. During the latter part of the evening, a black male sat at their table and carried on a conversation with Chris Jackson, one of complainant's girl friends. The man, from time to time, stared at the complainant.

At approximately 1 a.m., complainant left the nightclub. As she drove home, she was followed by a cream or light-yellow-colored car but, when she turned into the alley behind her garage, the auto following her continued down the street. As complainant prepared to close the garage doors, she was grabbed by a black male who shoved her up against the car door, pressed an object to her throat (causing a slight cut), and threatened to kill her if she said

anything. Complainant never observed the object but thought it was either a small knife or a fingernail clipper. The assailant closed the garage doors and made the complainant lie on the garage floor. There, for approximately 1 hour and 45 minutes, he forced her to engage in various sex acts, including intercourse. During this time, complainant made no effort to escape or resist. Later, she was permitted to dress and told to sit in her car while the assailant went through her purse and took a $20 bill. Before leaving, he threatened to harm complainant if she told the police. Complainant remained in the car until dawn—approximately 3½ hours—then went to her apartment, where she called her sister.

Complainant testified that, although the garage was dimly lit, she had sufficient opportunity to observe her assailant and the clothes he was wearing. She stated that her assailant was the same individual who visited her table at the nightclub. She was reaffirmed in this identification when the assailant said, "You are not going to tell Chris, are you?" Complainant identified the defendant as that man. She further testified that she selected defendant's picture from a group of photographs presented to her at the police station and that she also identified him in a police lineup. The prosecutor showed complainant a beige and burnt-orange striped sweater, and she identified it as one which had been worn by the person who sat at her table and later assaulted her.

On cross-examination, defense counsel established, among other things, that (1) both the garage and the nightclub were dimly lit; (2) complainant could not remember the description of clothing worn by her friends that night; (3) she never saw the weapon; (4) she made no effort to resist, escape or notify nearby residents by sounding the car horn; (5) she had never seen the defendant prior to that night and had only glanced at him at the nightclub; and (6) the cut on her throat did not

bleed. Complainant was cross-examined on her statement to police which indicated that the assailant experienced difficulty in achieving an erection, and on her testimony at trial in which she said the assailant had intercourse with her. On redirect, complainant testified that she was afraid of her assailant because of his threats, and, therefore, did not resist.

Complainant's sister testified, without objection by defense counsel, that, at 6:30 a.m., she received a telephone call from the complainant. Immediately thereafter, she went with her husband to complainant's apartment. On arrival, the sister observed that complainant had a slight cut on her throat, her clothes were dirty, hair mussed and eyes swollen, and she was emotionally upset. The sister testified that complainant stated she had been raped and forced to submit to deviate sexual conduct in the garage, and that the person who sat at the table at the nightclub was her assailant. Police Officer Glick testified that he received a call from complainant at 7 a.m., and when he arrived at the apartment, complainant's sister and brother-in-law were present. He corroborated the sister's physical description of the complainant and then testified to the details of the crime as they were related to him by the complainant that morning. The State, also without objection, presented the testimony of two other officers: one established that complainant identified defendant's picture when shown a group of photographs, and the other stated that complainant identified defendant as her assailant at the lineup. The hearsay testimony described in this paragraph is that which defendant maintains deprived him of a fair trial.

Four witnesses testified that the complainant was with them at the nightclub, and that a black male visited their table; two were unable to identify the defendant as the visitor. Chris Jackson, one of the two witnesses who identified defendant as that man, stated that she had

previously known the defendant, that he had come to the table and conversed with her, and that he left the nightclub four or five minutes after the complainant.

Following defendant's arrest, his auto, a white-vinyl-over-pale-yellow Thunderbird, was searched. A black sock containing a fingernail clipper was found therein.

Sergeant Hunk of the Decatur police department testified that he interviewed the defendant at the police station at approximately 10:30 p.m., November 5, 1975, the evening following the occurrence. After the interview, defendant was permitted to make a telephone call. Hunk stated that he overheard defendant tell the recipient of the call to "Get over to Jean's house and hunt clothing." In a warranted search of the home of defendant's girl friend, the police seized, among other things, a beige and burnt-orange striped sweater (the same sweater identified by the complainant at trial) and a sock which matched that found in defendant's auto.

Over objection, defense counsel elicited from Sergeant Hunk defendant's statements concerning his whereabouts on the night in question and the fact that defendant had stated that, after he left the nightclub, he went directly to his girl friend's house, arriving there at approximately 1:15 a.m.

James Bald of the Illinois Bureau of Identification testified that extraneous hairs, which, on directions from Officer Glick, complainant had combed from her pubic area, were found in tests to be pubic hairs with Negroid characteristics, and that stains on underpants worn by complainant that night were identified as semen.

Defense witnesses testified that they saw the defendant at the nightclub wearing a leather jacket. A female friend testified that, on the evening of November 4, defendant was at her house from 10 p.m. until about 11:30 p.m., that he returned between 11:45 p.m. and midnight and left again at about 12:30 a.m. (This time

sequence conflicted with that testified to by both State and defense witnesses.) Jean Smith, defendant's girl friend, testified that she was with defendant early in the evening and that he later returned to her home at about 1:15 a.m. and did not leave again that night. Defendant did not take the witness stand.

Following trial, defendant retained new counsel and filed an amended post-trial motion which claimed the denial of effective assistance of counsel. An evidentiary hearing was held.

Defendant contends that he was denied a fair trial by the admission of the hearsay testimony. The State contends that, under the spontaneous declaration exception to the hearsay rule, the admission of the testimony of complainant's sister and Officer Glick was not error.

This court has repeatedly held that, for testimony to qualify as a spontaneous declaration and be admissible regardless of declarant's presence at trial, three elements must be present: "(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." (*People v. Poland* (1961), 22 Ill. 2d 175, 181.) As this court noted in *Poland,* "The pertinent point is whether there was a lack of sufficient time to allow an opportunity for reflection and invention." (22 Ill. 2d 175, 181.) Here, more than 3½ hours had elapsed before the complainant told anyone the details of the crime. Moreover, the statements to Officer Glick came after the complainant had discussed the crime with her sister and brother-in-law. To conclude that complainant's statements were spontaneous in this case would do utter violence to the rule.

Defendant acknowledges the admissibility of hearsay rape complaints under the "corroborative complaint" exception (*People v. Damen* (1963), 28 Ill. 2d 464, 472-74), but argues that no details regarding the crime or

the identity of the assailant may be disclosed thereunder. We agree. Consequently, it must be determined whether, in this case, the hearsay revelations concerning the crime and the identity of complainant's assailant amounted to reversible error.

We observe that no fact regarding the crime was introduced by the State through hearsay testimony which fact was not later established by the complainant's own testimony. The hearsay testimony was merely cumulative. There also was substantial corroborative evidence, in addition to the hearsay testimony, *e.g.*, defendant's identification at the nightclub, his inculpatory statement, his ownership of a pale-yellow auto and of a beige and burnt-orange striped sweater, the discovery of a fingernail clipper in his car, and the presence of extraneous Negroid hairs on the victim. Aside from the unsworn and sometimes cumulative nature of hearsay evidence, its most objectionable feature, and the main rationale underlying its exclusion, is the opposing party's inability to test the real value of the testimony by exposing the source of the assertion to cross-examination. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 121; *Novicki v. Department of Finance* (1940), 373 Ill. 342, 344; McCormick, Evidence sec. 245, at 583 (2d ed. 1972); *cf. Moore v. United States* (1976), 429 U.S. 20, 21-22, 50 L. Ed. 2d 25, 28, 97 S. Ct. 29.) Here, defense counsel had an opportunity to and in fact did cross-examine the out-of-court declarant (complainant). We, therefore, find no reversible error in the admission of the sister's and the police officer's hearsay testimony.

We must also reject defendant's assertion that it was reversible error to allow the police officers' hearsay testimony concerning the identification of defendant's photograph and of his person at the lineup. Here again, the testimony was largely cumulative to that of the complain-

ant. Unlike *People v. Wright* (1965), 65 Ill. App. 2d 23, relied upon by the defendant, the instant complainant's testimony was significantly corroborated by other circumstantial facts. Also, as noted above, the complainant was available for cross-examination concerning her out-of-court identifications. This court has held that where, as here, the complaining witness' identification is positive, and where corroborative circumstantial facts are present, the admission of hearsay identification testimony will not constitute reversible error. *People v. Canale* (1972), 52 Ill. 2d 107, 114-15.

The defendant next asserts that the jury was improperly instructed. The contested non - Illinois Pattern Jury Instruction, which was given without objection by defense counsel, instructed the jury that a rape victim need not resist or cry out when restrained by fear of violence or when such act would have been futile or endangered her life. Defendant contends that inasmuch as consent was not formally raised as a defense, no instruction of this type should have been given. We disagree. Cross-examination of complainant emphasized her failure to resist or cry out. No error was therefore committed by instructing the jury in regard to the issues of resistance and outcry where, as here, there was evidence that the victim was threatened and intimidated. *People v. Vaughn* (1945), 390 Ill. 360, 370; *People v. Rickey* (1941), 375 Ill. 525, 532-36.

Defendant also contends that the evidence is insufficient to prove that he committed a robbery "while armed with a dangerous weapon." He argues that there is no evidence that he was armed at the time he took the money, and that, as a matter of law, a fingernail clipper cannot be considered a dangerous weapon within the meaning of section 18—2(a) (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a)). The fingernail clipper, which was exhibited to the jury and which has been included in the record

before this court, contains a sharp, pointed fingernail file. In *People v. Dwyer* (1927), 324 Ill. 363, 365, this court held:

> "Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case."

Under the circumstances of this case, we believe the nature of the weapon and its potential for doing harm were questions of fact for the jury to decide.

Though there is no evidence that the defendant displayed a weapon during the actual taking of the $20, we deem this immaterial where, as here, a weapon had been originally disclosed to the victim, and there is no evidence that the weapon had been discarded or otherwise made inaccessible. We find, therefore, that the evidence is sufficient to sustain the defendant's conviction for armed robbery.

As previously noted, defendant, in his post-trial motion, challenged trial counsel's competency, and a hearing was held. The most significant of defendant's complaints are trial counsel's failure to call defendant as a witness, failure to object to the hearsay testimony, failure to impeach complainant with allegedly inconsistent statements contained in police reports, and the introduction of conflicting alibi testimony.

While defendant argues that these acts or omissions reduced the trial to a "farce or mockery," he urges this court to abandon the "farce or mockery" standard and adopt one which would impose a requirement that counsel's performance meet a minimum level of profes-

sional competency. Were we to agree that such a requirement should be imposed, we would, nevertheless, here find that defendant did receive the assistance of a reasonably competent attorney.

Defendant has objected to some of trial counsel's acts or omissions, but has failed to cite any of counsel's affirmative steps, *e.g.*, counsel's motions for reduction of bond, discovery and suppression of evidence. The record reveals that counsel closely examined the complainant on matters such as her ability to identify the defendant, her lack of resistance, her failure to observe the weapon, and her statement regarding assailant's alleged difficulty in achieving an erection. Through the skillful cross-examination of Sergeant Hunk, counsel elicited defendant's statements concerning his alibi, which statements were consistent with the testimony of defendant's girl friend. Numerous other examples are contained in the record which demonstrate counsel's reasonable level of competency and effective representation.

Present counsel asserts that the defendant should have taken the stand. The record indicates that trial counsel recommended that the defendant not testify because defendant had admitted to him that the clothes which were introduced into evidence by the State were the same clothes defendant had worn at the nightclub. Under these circumstances, trial counsel could have reasonably believed that defendant's testimony under cross-examination would have been corroborative of the State's case and damaging to his own. At the post-trial hearing, defendant admitted that he adopted counsel's professional judgment in this matter. We have reviewed defendant's other assertions of incompetency, find that none warrant reversal, and will not, on this issue, unduly lengthen our opinion.

Finally, defendant contends, his sentences are excessive. The record discloses that defendant had had two adult misdemeanor convictions and a history of juvenile

delinquency. The adult convictions occurred within three years of the instant, very serious, crimes. As the State correctly observed, citing *Coker v. Georgia* (1977), 433 U.S. 584, 597, 53 L. Ed. 2d 982, 992-93, 97 S. Ct. 2861, 2868, "short of homicide, rape is the 'ultimate violation of self.' " There is no indication in the record that the trial court was biased or prejudiced against the defendant or that it did not structure the sentences so as to reflect defendant's potential for rehabilitation. We will not, therefore, disturb the sentences entered by the trial court. *People v. Heflin* (1978), 71 Ill. 2d 525, 545-46.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*