# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McBride*, 2012 IL App (1st) 100375

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON McBRIDE, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-0375 |
| Filed | May 17, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for aggravated vehicular hijacking under section 18-4(a)(3) of the Criminal Code which provides that a person commits aggravated vehicular hijacking when he violates section 18-3 of the Code and is armed with a dangerous weapon, other than a firearm, was reversed and the cause was remanded for a new trial on the limited issue of whether he was guilty of the charged offense under the preamended version of (a)(3) providing that a person hijacks a vehicle while armed with a dangerous weapon, since the trial court's instruction defining a "dangerous weapon" improperly allowed the jury to convict defendant without deciding whether the victim was injured, whether the firearm defendant had was loaded and operable, or whether it could have been used as a bludgeon to cause death or serious bodily harm. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-18367; the Hon. Joseph M. Claps, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part and case remanded, with instructions; mittimus modified. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Emily E. Filpi, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Douglas P. Harvath, and Jessica R. Bargmann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE J. GORDON delivered the judgment of the court, with opinion. Presiding Justice Epstein and Justice Howse concurred in the judgment and opinion. |

## OPINION

¶ 1    In this case, defendant Aaron McBride appeals from his conviction for aggravated vehicular hijacking.

¶ 2    On May 19, 2007, victim Kenneth Criswell was parking his car when a man holding what Criswell believed was a gun approached him and ordered him to get out of the car. The man then drove away in Criswell's car. Criswell subsequently identified McBride in a police lineup. McBride was charged with one count of aggravated vehicular hijacking. Following a jury trial, he was found guilty and sentenced to 9½ years' imprisonment. McBride now appeals. For the reasons that follow, we affirm in part, reverse in part, and remand.

¶ 3                                    I. BACKGROUND

¶ 4    On September 21, 2007, defendant was indicted on one count of aggravated vehicular hijacking. The indictment stated:

"Aaron McBride committed the offense of aggravated vehicular hijacking in that he, knowingly took a motor vehicle, to wit: a 2000 Honda, from the person or the immediate presence of Kenneth Criswell by the use of force or by threatening the imminent use of force, and he carried on or about his person, or was otherwise armed with a dangerous weapon, to wit: a handgun, in violation of chapter 720 act 5 section 18-4(a)(3) ***."

The version of section 18-4(a) of the Criminal Code of 1961 that was in force at the time that defendant was indicted, pursuant to a 2000 amendment, provides, in relevant part:

"A person commits aggravated vehicular hijacking when he or she violates Section 18-3 [vehicular hijacking]; and

* * *

(3) he or she carries on or about his or her person, or is otherwise armed *with a dangerous weapon, other than a firearm*; or

-2-

(4) he or she carries on or about his or her person or is otherwise armed with a firearm ***." (Emphasis added.) 720 ILCS 5/18-4(a) (West 2006).

By contrast, as shall be discussed below, the preamended version of section 18-4(a) does not make a distinction between firearm-related and non-firearm-related offenses. Thus, it provides:

"A person commits aggravated vehicular hijacking when he or she violates Section 18-3 [vehicular hijacking]; and

* * *

(3) he or she carries on or about his or her person, or is otherwise armed *with a dangerous weapon*." (Emphasis added.) 720 ILCS 5/18-4(a) (West 1998).

¶ 5    In this appeal, no questions are raised as to the identity of the perpetrator or the occurrence of the event. The sole issues raised involve the consequences of numbering the charge in the indictment under section 18-4(a)(3), the sufficiency of the proof that the instrument used by the defendant was proven to be a dangerous weapon, and defendant's contention that the jury was misinstructed as to the definition of a dangerous weapon.

¶ 6    At trial, Criswell testified that on the evening of May 19, 2007, when he was attempting to park his car in his garage, the defendant approached him and said, "Get out the car, bitch," holding a gun to Criswell's forehead. He said that he only saw the gun for an instant, but he did see the barrel. On cross-examination, Criswell stated that he only got a "slight glance" at the barrel and did not see any other part of the gun. Defense counsel asked him, "He didn't threaten to shoot you, [did] he?" Criswell replied, "No, but I assume he would have." Criswell also stated that the defendant hit him in the head when defendant placed the barrel of the gun against his forehead. "He put it up against my head hard," Criswell explained. The gun left a "deep bruise" and his forehead was "a little bloody," although blood was not "coming down."

¶ 7    Criswell said that he complied with the defendant's order to get out of the car. After hearing defendant driving away, Criswell went inside and called the police. On cross-examination, Criswell stated that he did not notice that his forehead was bleeding until the officers who arrived on the scene pointed it out to him, and he did not go to the doctor or to the hospital for his injury.

¶ 8    Criswell also testified that he subsequently identified defendant in a photo lineup on August 1, 2007, and in a physical lineup on August 22, 2007.

¶ 9    The State then called a series of four officers and a forensic scientist to testify to the recovery of Criswell's car, the recovery of evidence from it, and the analysis of that evidence. These witnesses established that Criswell's car was recovered by the police and that fingerprints matching defendant's were found on the exterior passenger door.

¶ 10    The defense called Officer Wedster,[1] one of the officers who responded to Criswell's call immediately following the hijacking. Officer Wedster testified that when he spoke to Criswell on May 19, 2007, he did not see any injuries on Criswell, he did not recall seeing

---

[1]Officer Wedster's first name is not included in the record.

any blood on him, and, while he did not recall whether Criswell told him that he had been hit in the head with a gun, his police report did not contain any mention of such an incident. On cross-examination, Officer Wedster testified that he did check the box indicating an injury on his police report.

¶ 11    After the conclusion of testimony, the trial court instructed the jury on the offense of aggravated vehicular hijacking as follows:

> "A person commits the offense of aggravated vehicular hijacking when he knowingly takes a motor vehicle from the person or the immediate presence from [*sic*] another by the use of force or threatening the imminent use of force, and he carries on or about his person or is otherwise armed with a dangerous weapon.
>
> To sustain the charge of aggravated vehicular hijacking, the State must prove the following propositions: First, the defendant took a motor vehicle from the person or immediate presence of Kenneth Criswell, and second, that the defendant did so by the use of force or by threatening the imminent use of force, and third, that the defendant carried on or about his person or was otherwise armed with a dangerous weapon at the time of the taking."

Defendant made no objection to these instructions, and the parties do not raise any issue as to the propriety of these instructions on appeal.

¶ 12    During deliberations, the jury sent a note to the trial judge asking for the definition of "dangerous weapon." Outside the presence of the jury, the trial judge held a conference with defense counsel and counsel for the State to discuss how to answer the jury's question. The trial court noted that the aggravated vehicular hijacking statute does not define the term "dangerous weapon." Defense counsel requested that the trial court tell the jurors to use the plain meaning of the words, or, in the alternative, to give them the definition from Black's Law Dictionary. Counsel for the State argued that the definition from Black's Law Dictionary was inadequate because it did not classify firearms as inherently dangerous. Instead, counsel for the State proposed that the trial court give the jury the definition of "dangerous weapon" contained in the armed violence statute (720 ILCS 5/33A-1 (West 2006)). In the end, the trial judge sent back a composite definition consisting of both the definition from the armed violence statute and the definition in Black's Law Dictionary, over defense counsel's objection to the inclusion of the former. The composite definition read as follows:

> "Definition:
>
> (1) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon.
>
> (2) A Category I weapon is a handgun, sawed-off shotgun, sawed-off rifle, any other firearm small enough to be concealed upon the person, semiautomatic firearm, or machine gun. A Category II weapon is any other rifle, shotgun, spring gun, other firearm, stun gun or taser as defined in paragraph (a) of Section 24-1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife,

-4-

stiletto, axe, hatchet, or other deadly or dangerous weapon or instrument of like character. As used in this subsection (b) 'semiautomatic firearm' means a repeating firearm that utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round and that requires a separate pull of the trigger to fire each cartridge.

(3) A Category III weapon is a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character.

Also:

One dangerous to life; one by the use of which a serious or fatal wound or injury may probably or possibly be inflicted. Also: any article, which, in circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or other serious physical injury."

¶ 13 The jury found defendant guilty of aggravated vehicular hijacking, and the court sentenced him to nine years and six months in prison. This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15 On appeal, defendant raises four main contentions of error. The first two concern the sufficiency of the evidence. Defendant contends that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated vehicular hijacking pursuant to the subsection under which he was charged. As noted, defendant was indicted and convicted of aggravated vehicular hijacking under section 18-4(a)(3) (720 ILCS 5/18-4(a)(3) (West 2006)), the amended version of which criminalizes vehicular hijacking while "armed with a dangerous weapon, other than a firearm." Defendant argues, first of all, that the evidence at trial did not demonstrate that he was armed with a dangerous weapon "other than a firearm," and, second, that the evidence at trial did not demonstrate that the gun held by defendant was loaded or otherwise dangerous. Thus, he states that this court should either vacate his conviction for aggravated vehicular hijacking or reduce it to the lesser included offense of vehicular hijacking.[2]

¶ 16 Defendant's remaining two contentions of error both concern the jury's request during deliberations for the definition of "dangerous weapon." Defendant contends that the trial court's response misstated the law, insofar as it included firearms in the definition of dangerous weapons and could have misled the jury into believing that firearms are *per se* dangerous. Defendant also contends that his counsel was ineffective for proposing a definition of dangerous weapons that did not exclude firearms. Thus, he argues that this court should reverse his conviction and remand for a new trial.

¶ 17                          A. Sufficiency of the Evidence

¶ 18 Defendant first contends that the State failed to prove beyond a reasonable doubt that he

---

[2]Defendant does not contest that the evidence was sufficient to convict him of vehicular hijacking.

was guilty of aggravated vehicular hijacking pursuant to the subsection of the aggravated vehicular hijacking statute under which he was charged and convicted. In particular, defendant contends that the evidence was not sufficient to establish that he was armed with a weapon "other than a firearm," nor was it sufficient to establish that the gun he held was "dangerous."

¶ 19 In reviewing a challenge to the sufficiency of the evidence at trial, the relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The reviewing court may not substitute its judgment for that of the trier of fact with regard to the weight of the evidence, the credibility of witnesses, or the resolution of conflicting testimony. *People v. Kotlarz*, 193 Ill. 2d 272, 298 (2000).

¶ 20 1. Whether Defendant Was Armed With
a Weapon "Other Than a Firearm"

¶ 21 Defendant first argues that the evidence was insufficient for the jury to convict him of aggravated vehicular hijacking because there was no evidence that he was armed with a weapon "other than a firearm," as required pursuant to the present version of subsection (a)(3). The State contends that defendant was not charged under the present version of subsection (a)(3), but under the preamended version, which does not draw any distinction between firearm-related and non-firearm-related vehicular hijacking. In the alternative, the State contends that, even under the present version of subsection (a)(3), the fact that defendant might have been armed with a firearm would not preclude him from being convicted under that section. We consider the State's contentions in reverse order.

¶ 22 Thus, we begin with the State's contention that a firearm qualifies as a dangerous weapon under the amended version of subsection (a)(3).[3] Defendant contests this assertion, arguing that under the language of the statute, it is an element of the offense that the weapon not be a firearm. In other words, according to defendant, the State bears the burden of proving that the defendant was not armed with a firearm.

¶ 23 In all statutory construction, our primary task is to ascertain and effectuate the intent of the legislature. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). In doing so, we must assume that the legislature did not intend to create an absurd or unjust result. *Id.* However, we are also mindful that the language of the statute is the surest and most reliable indicator of legislative intent, and where that language is clear and unambiguous, we must apply that language

---

[3]We note that the State does not argue that there was sufficient notice in the indictment for the case to proceed under postamended subsection (a)(4), or for the indictment to function as a dual-pronged indictment under subsections (a)(3) and (a)(4). In fact, the State specifically disavows any such position in its brief, stating that the language "armed with a dangerous weapon" in the indictment makes clear that defendant is not being charged under subsection (a)(4), but solely under subsection (a)(3).

without further aids of statutory construction. *People v. Zaremba*, 158 Ill. 2d 36, 40 (1994); see *Village of Carpentersville v. Pollution Control Board*, 135 Ill. 2d 463, 469-70 (1990) (declining to consider legislative history where language of statute was unambiguous). Significantly, we may not "correct" an apparent legislative oversight by interpreting a statute in a way that is inconsistent with its clear and unambiguous language. *Pullen*, 192 Ill. 2d at 42.

¶ 24    In this case, the language of the statute, as amended, is clear and unambiguous. Subection (a)(3) provides that a defendant commits aggravated vehicular hijacking where "he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, *other than a firearm*." (Emphasis added.) 720 ILCS 5/18-4(a)(3) (West 2006). The statute does not provide, for instance, that the weapon must be dangerous for reasons other than its status as a firearm, nor does it contain any other such qualifying proviso. It simply specifies that a defendant must be armed with a weapon "other than a firearm." Thus, applying the unambiguous language of the statute (see *Pullen*, 192 Ill. 2d at 42; *Zaremba*, 158 Ill. 2d at 40), we must reject the State's argument that a firearm can qualify as "a dangerous weapon, other than a firearm" under the amended version of subsection (a)(3). See *People v. Barnett*, 2011 IL App (3d) 090721, ¶ 37-38 (reversing defendant's conviction for armed robbery under subsection providing that the perpetrator is "armed with a firearm" where jury issued a special finding that the State failed to prove that he was armed with a firearm; appellate court could not direct lower court to enter a conviction for armed robbery under subsection providing that the perpetrator is "armed with a dangerous weapon other than a firearm," because the subsections are "mutually exclusive of each other").

¶ 25    The State cites three cases for the proposition that a firearm may be considered a dangerous weapon for purposes of subsection (a)(3). However, these cases are inapposite. In *People v. Ligon*, 365 Ill. App. 3d 109, 116 (2006), an aggravated vehicular hijacking case, the court held that a BB gun used by defendant could qualify as a "dangerous weapon" under subsection (a)(3) because it was of a suitable size and weight to be used as a bludgeon. However, a BB gun does not qualify as a firearm for purposes of subsection (a)(3). 720 ILCS 5/2-7.5 (West 2000) ("Except as otherwise provided in a specific Section, 'firearm' has the meaning ascribed to it in Section 1.1 of the Firearm Owners Identification Card Act."); 430 ILCS 65/1.1(1) (West 2000) (Firearm Owners Identification Card Act) (excluding BB guns from the definition of firearms). Accordingly, since *Ligon* did not involve a firearm, it does not stand for the proposition that being armed with a firearm that may incidentally be used as a bludgeon satisfies the requirement of subsection (a)(3) that the defendant be armed with a dangerous weapon "other than a firearm."

¶ 26    The other two cases cited by the State are armed robbery cases, not aggravated vehicular hijacking cases. *People v. Thorne*, 352 Ill. App. 3d 1062, 1070-71 (2004); *People v. Skelton*, 83 Ill. 2d 58, 62 (1980). The version of the armed robbery statute at issue in *Thorne* and *Skelton* did not raise any distinction between firearms and nonfirearms but merely provides that a person commits armed robbery when he or she commits robbery "while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." 720 ILCS 5/18-2(a) (West 1998); see *Thorne*, 352 Ill. App. 3d at 1070 n.1 (noting that the armed robbery statute was subsequently amended in 2000 to add subsections regarding firearms and

-7-

their use in a robbery). Accordingly, *Thorne* and *Skelton* provide no guidance with regard to the statutory language at issue in the present case, which specifically excludes firearms.

¶ 27    However, we need not pursue the issues of interpretation raised by the postamended aggravated vehicular hijacking statute, since the State correctly contends that the indictment in this case could only have charged this defendant under the preamended version of the statute, which does not draw any distinction between firearm-related and non-firearm-related offenses. This is because, at the time of defendant's indictment on September 21, 2007, the postamended statute would have been deemed unconstitutional under the reasoning of *People v. Hauschild*, 226 Ill. 2d 63 (2007), issued on June 7, 2007.

¶ 28    At this juncture, it will be helpful to briefly retrace the development and constitutional implications of the recent enactments of various criminal statutes that seek to distinguish, for purposes of sentence enhancement, between various crimes when committed with a firearm as opposed to other types of weapons. As noted, prior to the 2000 amendment, the aggravated vehicular hijacking statute read, in relevant part:

> "A person commits aggravated vehicular hijacking when he or she violates Section 18-3 [vehicular hijacking]; and
>
> * * *
>
> (3) he or she carries on or about his or her person, or is otherwise armed *with a dangerous weapon*." (Emphasis added.) 720 ILCS 5/18-4(a) (West 1998).

¶ 29    Effective January 1, 2000, our legislature enacted Public Act 91-404 for the stated purpose of "deter[ring] the use of firearms in the commission of a felony offense." Pub. Act 91-404, § 5 (eff. Jan. 1, 2000) (codified at 720 ILCS 5/33A-1(b)(1) (West 2000)). This enactment increased the penalties for certain felonies, including aggravated vehicular hijacking as well as attempted murder, aggravated kidnapping, and armed robbery, when the defendant possesses or uses a firearm in the commission of the offense. See *People v. Washington*, 2012 IL 107993, ¶ 6; *Hauschild*, 226 Ill. 2d at 72. These increased penalties are typically referred to as the "15/20/25-to-life" sentencing provisions. *Hauschild*, 226 Ill. 2d at 72. Thus, the amended version of the aggravated vehicular hijacking statute reads as follows:

> "(a) A person commits aggravated vehicular hijacking when he or she violates Section 18-3 [defining vehicular hijacking]; and
>
> * * *
>
> (3) he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon, other than a firearm; or
>
> (4) he or she carries on or about his or her person or is otherwise armed with a firearm; or
>
> (5) he or she, during the commission of the offense, personally discharges a firearm; or
>
> (6) he or she, during the commission of the offense, personally discharges a firearm that proximately causes great bodily harm, permanent disability, permanent disfigurement, or death to another person.

(b) Sentence. *** Aggravated vehicular hijacking in violation of subsection (a)(3) is a Class X felony for which a term of imprisonment of not less than 7 years shall be imposed. Aggravated vehicular hijacking in violation of subsection (a)(4) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court. Aggravated vehicular hijacking in violation of subsection (a)(5) is a Class X felony for which 20 years shall be added to the term of imprisonment imposed by the court. Aggravated vehicular hijacking in violation of subsection (a)(6) is a Class X felony for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/18-4(a) (West 2006).

¶ 30    In *People v. Walden*, 199 Ill. 2d 392 (2002), and *People v. Moss*, 206 Ill. 2d 503 (2003), our supreme court invalidated certain sections of the 15/20/25-to-life sentencing provisions, finding that the enhanced sentences violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.")). At the time that *Walden* and *Moss* were decided, Illinois courts recognized three ways in which a defendant's sentence could violate the proportionate penalties clause: (1) if it was "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community" (*Walden*, 199 Ill. 2d at 394), (2) if it was greater than the sentence for an offense with identical elements (the identical elements test), or (3) if it was greater than the sentence for a similar offense that created less serious of a threat to public health and safety (cross-comparison). *Hauschild*, 226 Ill. 2d at 75. Both *Walden* and *Moss* were decided under the third test, namely, cross-comparison. *Walden*, 199 Ill. 2d. at 397 (holding that 15-year sentencing enhancement for armed robbery while in possession of a firearm was unconstitutional); *Moss*, 206 Ill. 2d at 525-26, 531 (citing *Walden* in support of its holding that 15-year and 20-year sentencing enhancements for possession of a firearm and personal discharge of a firearm in commission of aggravated vehicular hijacking, aggravated kidnapping, and armed robbery were unconstitutional).

¶ 31    Subsequently, in *People v. Sharpe*, 216 Ill. 2d 481, 519 (2005), our supreme court abandoned the cross-comparison test, declaring it to be "nothing but problematic and unworkable." Thus, the *Sharpe* court overruled cases using the cross-comparison test to invalidate a penalty, which included *Walden* and *Moss*, and so the constitutionality of the 15/20/25-to-life sentencing enhancements was temporarily restored. *Id.*; see *Hauschild*, 226 Ill. 2d at 76.

¶ 32    However, two years later, in the 2007 decision of *Hauschild*, our supreme court faced another challenge to the constitutionality of the 15/20/25-to-life sentencing enhancements under the proportionate penalties clause, this time under the identical elements test, which *Sharpe* did not purport to abandon. *Hauschild* was an armed robbery case. The *Hauschild* defendant, who was convicted of armed robbery under the amended version of section 18-2(a)(2) (720 ILCS 5/18-2(a)(2) (West 2000), argued that this section was unconstitutional, because the penalty for armed robbery under this section was significantly more severe than the penalty for the equivalent offense of armed violence predicated on robbery with a category I or category II weapon (720 ILCS 5/33A-2(a) (West 2000)). The *Hauschild* court agreed, observing that the elements for armed robbery while armed with a firearm under

section 18-2(a)(2) were identical to the elements for armed violence predicated on robbery with a category I or II weapon, but the former carried a possible sentence of 21 to 45 years, while the latter only carried a possible sentence of 15 to 30 years. *Hauschild*, 226 Ill. 2d at 86. Thus, the *Hauschild* court ruled that defendant's sentence for armed robbery while armed with a firearm under section 18-2(a)(2) was unconstitutional. *Id.* at 86-87.

¶ 33   The decision in *Hauschild* was issued on June 7, 2007, a few months before defendant's indictment in this case on September 21, 2007.[4] It served to once again call into doubt the constitutionality of the sentencing enhancements under the postamended aggravated vehicular hijacking statute, since those enhancements mirror the ones under the postamended armed robbery statute. Indeed, in *People v. Andrews*, 364 Ill. App. 3d 253 (2006), decided a year before *Hauschild*, the appellate court anticipated the reasoning in the *Hauschild* decision with respect to the armed robbery statute in holding that the postamended aggravated vehicular hijacking statute was unconstitutional under the identical elements test. The *Andrews* court found that commission of vehicular hijacking while carrying a firearm constituted both aggravated vehicular hijacking under section 18-4(a)(4) and armed violence with a category I weapon predicated on vehicular hijacking under section 33A-2(a). *Id.* at 275. The court also observed that the sentencing range for the former was 21 to 45 years' imprisonment, while the sentencing range for the latter was only 15 to 30 years' imprisonment. *Id.* at 274-75. Thus, the *Andrews* court held that subsection (a)(4) of the aggravated vehicular hijacking statute was void, reversed defendant's conviction for aggravated vehicular hijacking under subsection (a)(4), and ordered the entry of a judgment of conviction for simple vehicular hijacking. *Id.* at 282-83.

¶ 34   It is against this backdrop that the State correctly cites *Washington*, 2012 IL 107993, ¶ 40, for the proposition that it was entitled to charge defendant using the preamended version of the aggravated vehicular hijacking statute. In *Washington*, the defendant was charged with committing aggravated vehicular hijacking, aggravated kidnapping, and armed robbery "while armed with a dangerous weapon, to wit: a firearm." (Internal quotation marks omitted.) *Washington*, 2012 IL 107993, ¶ 5. The *Washington* court explained:

   "Although defendant committed the charged offenses in 2004, the State indicted defendant using the 'preamended' versions of the statutes. It did so because the sentencing enhancements in the amended versions had been declared unconstitutional by this court in *People v. Walden* *** and *People v. Moss* ***. Based on *Walden* and *Moss*, the State believed that the preamended statutes had come back into force. See *People v. Gersch*, 135 Ill. 2d 384, 390 (1990) (the effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment)." *Id.* ¶ 7.

---

   [4]We note that the legislature amended the armed violence statute effective October 23, 2007, in an apparent attempt to cure the constitutional deficiency found in *Hauschild*. See *People v. Clemons*, 2012 IL 107821, ¶ 15. However, since this amendment took effect after defendant in this case was indicted, it would have no impact upon the outcome of this case. *Id.* at ¶ 19 (stating that "*Hauschild* remains the law as to the meaning of the armed violence statute prior to its amendment by Public Act 95-688").

But see *Washington*, 2012 IL 107993, ¶ 50 (Kilbride, C.J., dissenting, joined by Theis, J.) (disagreeing with the majority's conclusion that the preamended statutes had come back into force, arguing instead that *Walden* and *Moss* invalidated only the sentence enhancement provisions of the amended statutes while leaving the substantive definitions of the relevant offenses intact). The indictment at issue in *Washington* occurred prior to the *Sharpe* decision, at a time during which *Walden* and *Moss* were still in force. *Id.* ¶ 8.

¶ 35 The defendant in *Washington* appealed his conviction for aggravated vehicular hijacking, claiming that there was a fatal variance between the indictment and the proof at trial where the indictment charged the use of "a 'firearm' " but the State was allowed to prove merely that defendant was armed with a " 'dangerous weapon' " during the commission of the crime. *Id.* ¶ 39. The *Washington* court disagreed, finding that the State's proof properly conformed to the preamended version of the aggravated vehicular hijacking statute:

> "As noted above, in 2004, when the crimes here were committed, the '15-20-25-to-life' sentencing enhancements contained in the 2000 amended statutes had been held unconstitutional. Thus, the State charged defendant under the predecessor statutes and defendant has never challenged the propriety of proceeding in this manner. Under the predecessor statutes, the State was required to prove that defendant committed the offenses of robbery, kidnapping and vehicular hijacking 'while armed with a dangerous weapon.' Moreover, defendant was not only charged under the predecessor statutes, he was prosecuted and convicted under them. The jury was fully instructed that, in order to find defendant guilty, it had to find that he committed the charged offenses 'while armed with a dangerous weapon.' " *Id.* ¶ 40.

Thus, the *Washington* court found there to be no variance, fatal or otherwise, between the indictment and the proof presented at trial. *Id.* ¶ 41.

¶ 36 Accordingly, just as the State in *Washington* had to proceed under the preamended version of the aggravated vehicular hijacking statute, since the amended version was unconstitutional under *Walden* and *Moss*, the State in the instant case also had to proceed under the preamended version, since the amended version was unconstitutional under the reasoning of *Hauschild* and under *Andrews*. That is, the State would have been unable to indict defendant on September 21, 2007, for aggravated vehicular hijacking under subsection (a)(4) of the aggravated vehicular hijacking statute, as amended, and thus it had no option but to charge him under the preamended version of that statute. Therefore, just as the preamended statute was automatically resuscitated when the amended statute was invalidated by *Walden* and *Moss*, so, too, was it automatically resuscitated when the amended statute was invalidated by the reasoning of *Hauschild* and by *Andrews*. See *Washington*, 2012 IL 107993, ¶ 40.

¶ 37 As noted, the preamended version of subsection (a)(3) does not contain any specification regarding the use of a firearm in the commission of the offense but merely provides that vehicular hijacking qualifies as aggravated vehicular hijacking when the perpetrator "carries on or about his or her person, or is otherwise armed with a dangerous weapon." 720 ILCS 5/18-4(a)(3) (West 1998). Accordingly, we reject defendant's claim that the State was required to prove that he was armed with a weapon "other than a firearm" in order to convict

him of aggravated vehicular hijacking under subsection (a)(3).

¶ 38              2. Whether Defendant Was Armed With a "Dangerous" Weapon

¶ 39       Defendant next contends that there was insufficient proof to establish that the weapon he used in this case was "dangerous," as required under subsection (a)(3) of the aggravated vehicular hijacking standard.

¶ 40       Our supreme court has defined a "dangerous weapon" as "an instrument that is used or may be used for the purpose of offense or defense and capable of producing death." *People v. Dwyer*, 324 Ill. 363, 364 (1927) (discussing definition of "dangerous weapon" for purposes of armed robbery statute); see *Skelton*, 83 Ill. 2d at 66 (in determining dangerousness, relevant inquiry is whether weapon is "sufficiently susceptible to use in a manner likely to cause serious injury"); *cf.* Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 703 n.67 (1972) ("[T]he greater punishment is awarded for armed robbery [as opposed to simple robbery] so as to deter the dangerous person who is actually capable of inflicting death or serious bodily harm."). Whether an object constitutes a dangerous weapon is generally a question of fact. *People v. Ross*, 229 Ill. 2d 255, 275 (2008); *Skelton*, 83 Ill. 2d at 66; see *People v. Elliott*, 299 Ill. App. 3d 766, 773 (1998) (question of whether pepper spray used during robbery constituted a dangerous weapon was one for the trier of fact to determine); *Ligon*, 365 Ill. App. 3d at 116 (question of whether BB gun could be used as dangerous weapon was a question of fact for jury to determine). It is only where the character of the object permits only one conclusion that the question becomes one of law for the court. *Skelton*, 83 Ill. 2d at 66.

¶ 41       Defendant's contention as to the sufficiency of proof that the weapon was dangerous was made with respect to the postamended aggravated vehicular hijacking statute, but the same contention would be relevant under the preamended statute as well. In support, defendant urges that in this particular case, the part of the weapon that was seen was the barrel of a gun lodged against the victim's forehead that, at worst, made his forehead "a little bloody." There was no testimony to indicate whether the gun was loaded, nor was there any testimony as to the type of gun involved or as to its size and weight to enable a determination to be made as to whether it would be dangerous when used as a bludgeon, other than that its presence against the victim's forehead drew some blood.

¶ 42       Our supreme court in *Ross*, in analyzing whether a weapon was dangerous, defined three categories of dangerous objects: "(1) objects that are dangerous *per se*, such as loaded guns; (2) objects that are not necessarily dangerous, but were actually used in a dangerous manner during the robbery; and (3) objects that are not necessarily dangerous, but may become dangerous when used in a dangerous manner." *Ross*, 229 Ill. 2d at 275. Moreover, in *Ross*, our supreme court held that it cannot be presumed that any object which has the outward appearance of a gun is loaded and operable (and therefore dangerous), because this would impermissibly shift to the defendant the burden of proving that the object was not dangerous. *Id.* at 273. Rather, it falls to the State to prove dangerousness, either by presenting evidence that the gun was loaded and operable, or by presenting evidence that it was either used or capable of being used as a bludgeon. *Id.* at 276.

¶ 43        Although *Ross* is an armed robbery case, the *Ross* court does not purport to limit its definition of "dangerous weapon" to armed robbery cases but, rather, speaks expansively of "the common law definition of dangerous weapon" in holding that "Illinois cases do not create a mandatory presumption that any gun is a dangerous weapon." *Id.* at 275-76. Since the aggravated vehicular hijacking statute does not contain any definition of "dangerous weapon," the common law definition, as defined by our supreme court in *Ross*, would control. See *Washington*, 2012 IL 107993, ¶ 29-37 (applying *Ross* definition of "dangerous weapon" in assessing defendant's convictions for aggravated vehicular hijacking, aggravated kidnapping, and armed robbery); *Ligon*, 365 Ill. App. 3d at 116 (stating, in the context of an aggravated vehicular hijacking case, that where the State fails to present evidence that a gun was loaded or was actually used in a dangerous manner during the crime, it falls to the jury to determine as a question of fact whether the gun could have been used in a dangerous manner, *e.g.*, as a bludgeon (citing *People v. Thorne*, 352 Ill. App. 3d 1062, 1072 (2004)).

¶ 44        Where the State does not present evidence that the gun was loaded and operable, or that it was either used or capable of being used in a dangerous manner, the State has failed to prove dangerousness as a matter of law. *Ross*, 229 Ill. 2d at 276-77. Thus, for instance, in *Ross*, where the defendant was charged with armed robbery, the evidence at trial showed that defendant used a small, portable, and concealable BB gun during the course of the robbery. *Id.* The State did not present the gun or photographs of the gun at trial, nor did it present evidence that it was loaded, that it was used or brandished as a bludgeon, or any evidence regarding its weight or composition. *Id.* at 277. Under these facts, the *Ross* court found that the evidence was insufficient to prove that the gun was a dangerous weapon. *Id.* Consequently, the trial court was directed to enter a judgment of conviction for simple robbery and sentence the defendant accordingly. *Id.*

¶ 45        In reaching this decision, the *Ross* court cited with approval its decision in *Skelton*, 83 Ill. 2d at 66, where the court held that a defendant could not be convicted of armed robbery where he used a harmless toy gun in the robbery. The court held that dangerousness is objective, not subjective, such that the victim's belief concerning the dangerousness of the weapon is not controlling. *Id.* at 63. The court then noted that the toy gun used by defendant was too small and lightweight to be used as a bludgeon and did not fire blank shells or pellets. *Id.* at 66. It concluded that "except that it could, conceivably, be used to poke the victim in the eye (and a finger could be used for that purpose), it is harmless." *Id.*

¶ 46        Defendant argues that the instant case is analogous to *Ross* and *Skelton*, since the gun itself was not introduced into evidence, nor was there any evidence that it was loaded and operable. The State, on the other hand, argues that the jury could have found the gun in the instant case to have been dangerous because it was actually used as a bludgeon during the crime, thus falling into the category of objects that are dangerous because they "were actually used in a dangerous manner" during the crime (*Ross*, 229 Ill. 2d at 275). We agree that there was sufficient evidence to permit the jury to have made such a finding. Courts have held that where there is some evidence that the weapon at issue was actually used to injure the victim, even where such injury is not serious, the dangerousness of the weapon is an issue of fact for the jury to decide. In this regard, we are guided by our supreme court's decision in *People v. Robinson*, 73 Ill. 2d 192 (1978), where the court rejected the defendant's argument that the

-13-

evidence was insufficient to convict him of armed robbery. *Id.* at 202. The victim testified that the defendant pressed an object to her throat which caused a slight cut, although the cut did not bleed. *Id.* at 196-97. She did not see the object. *Id.* at 196. A fingernail clipper containing a sharp, pointed file was later recovered from defendant's car. *Id.* at 198. The defendant argued that a fingernail clipper could not be considered a dangerous weapon as a matter of law. *Id.* at 201. The *Robinson* court disagreed, holding that, under the facts of the case, the nature of the weapon and its potential for doing harm were questions of fact for the jury to decide. *Id.* at 202 (" 'when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use, and the circumstances of the case' " (quoting *Dwyer*, 324 Ill. at 365)).

¶ 47     Similarly, in *People v. de la Fuente*, 92 Ill. App. 3d 525, 527 (1981), while struggling for the victim's purse, the defendant struck the victim on the head four times with a starter pistol that was incapable of firing bullets. The victim's injuries, if any, were not discussed by the court. Nevertheless, the court upheld the defendant's conviction for armed robbery, holding that because the pistol was actually used as a bludgeon, there was sufficient evidence to find that it was a dangerous weapon. *Id.* at 536.

¶ 48     The present case is analogous to *Robinson* and *de la Fuente*. Although the testimony at trial was conflicting as to the extent of Criswell's injury, there was sufficient evidence for a jury to find that the defendant used the gun in a dangerous manner during the course of the hijacking. Criswell testified at trial that defendant hit him with the gun, explaining that "He put it up against my head hard." He stated that the gun left a "deep bruise" and his forehead was "a little bloody," although he admitted that he did not notice that his forehead was bleeding until it was subsequently pointed out to him by the officers who responded to his call, and he did not go to the doctor or to the hospital for his injury. Officer Wedster, one of the responding officers, testified that he did not recall seeing blood on Criswell, but he stated that he did check the box indicating injury on his police report.

¶ 49     Viewing the evidence in the light most favorable to the prosecution, as we must upon a challenge to the sufficiency of the evidence (*Cunningham*, 212 Ill. 2d at 278), we find that a rational trier of fact could have found that defendant's gun was of a size and weight sufficient to cause bleeding when defendant merely "put it up against [Criswell's] head hard" and was therefore "actually used in a dangerous manner" within the meaning of *Ross*. *Ross*, 229 Ill. 2d at 275 (objects that are not necessarily dangerous but were used in a dangerous manner during the crime can be considered dangerous weapons); see *Robinson*, 73 Ill. 2d at 196-97, 202 (evidence was sufficient for jury to conclude that fingernail clipper was a dangerous weapon where defendant pressed fingernail clipper against the victim's neck, causing a slight cut that did not bleed).

¶ 50                          B. Trial Court's Definition of "Dangerous Weapon"

¶ 51     We must emphasize, however, that while the evidence in this case may be sufficient to support a jury finding that the weapon used by defendant was dangerous, the evidence is clearly insufficient to conclude that the weapon was dangerous as a matter of law without

requiring a jury determination. See *Ross*, 229 Ill. 2d at 276 (cannot be presumed that any object with the outward appearance of a gun is loaded and operable and thereby dangerous; rather, dangerousness is typically a matter of fact for the jury). Thus, we must now determine whether the supplemental instruction given by the trial court as to the definition of "dangerous weapon" usurped the function of the jury so as to require that the judgment of aggravated vehicular hijacking be reversed or reduced to the lesser included offense of vehicular hijacking. In doing so, we are mindful that the trial court has a duty to provide instruction when "the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Curtis*, 354 Ill. App. 3d 312, 321 (2004) (trial court had a duty to answer jury question as to the definition of a specific phrase contained in a jury instruction, since such definition was a question of law (citing *People v. Millsap*, 189 Ill. 2d 155, 160 (2000))). However, when the trial court answers a question, it has a duty not to misstate the law. *Curtis*, 354 Ill. App. 3d at 323.

¶ 52   The definition given by the court, quoted in full above, contains the following, taken from the armed violence statute (720 ILCS 5/33A-1 (West 2006)):

"(1) 'Armed with a dangerous weapon'. A person is considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon.

(2) A Category I weapon is a handgun, sawed-off shotgun, sawed-off rifle, any other firearm small enough to be concealed upon the person, semiautomatic firearm, or machine gun."

¶ 53   Defendant contends that this definition could mislead the jury into believing that the weapons listed in Category I, including handguns, are *per se* dangerous, without need for any showing that they are loaded and operable or that they are dangerous due to other factors, such as their use or potential use as bludgeons.[5] We agree.

¶ 54   As previously pointed out, our supreme court has emphasized that there can be no presumption that a gun is a dangerous weapon even where it is proven that the object involved is a real gun. *Ross*, 229 Ill. 2d at 273; see *Washington*, 2012 IL 107993, ¶ 29-37 (applying *Ross* standard to aggravated vehicular hijacking case). Rather, our supreme court has made clear that the State has the burden to prove that the gun was a dangerous weapon "by presenting evidence that the gun was loaded and operable, or by presenting evidence that it was used or capable of being used as a club or bludgeon." *Ross*, 229 Ill. 2d at 276. By contrast, the definition of "dangerous weapons" given in the trial court's supplemental instruction indicates that handguns and the other listed firearms are *per se* dangerous weapons, without a need for any further showing of dangerousness by the State, in contravention of *Ross*, which would require proof that the gun was loaded and operable or used or capable of being used as a bludgeon. See *Ross*, 229 Ill. 2d at 276. In fact, the trial

_____

[5]Contrary to the State's implication in its brief, the defendant does not argue that the trial court ought not to have given any definition at all in response to the jury's question. Rather, he argues that the definition actually given by the trial court was both an incorrect statement of law and misleading to the jury.

-15-

court gave this definition because it was itself under the mistaken impression that firearms were classified as *per se* dangerous under Illinois law, as demonstrated by its statement to counsel prior to giving the supplemental instruction: "I have to then tell [the jury] so they don't misunderstand my instruction that if you find the object alleged to have been used is a firearm, *a firearm under Illinois law is by definition a dangerous weapon*." (Emphasis added.) Accordingly, the trial court gave the jury an instruction that was designed to impart and did, in fact, impart the erroneous statement of law that handguns are categorically classified as dangerous by Illinois courts.

¶ 55    The State makes no attempt to distinguish *Ross* or otherwise argue that the standard which *Ross* applied under the armed robbery statute does not apply under the aggravated vehicular hijacking statute. In any case, such an argument would be unfounded. This was clearly enunciated by our supreme court in *Washington*, 2012 IL 107993, ¶ 29-37, which has indeed applied the proof requirement in *Ross* to the aggravated vehicular hijacking statute and, more specifically, to preamended subsection (a)(3), the very same subsection involved in the instant case. The State nevertheless cites the pre-*Ross* case of *People v. Beard*, 287 Ill. App. 3d 935, 938 (1997), an aggravated vehicular hijacking case, for the proposition, stated in passing by the court, that "[d]angerous weapons are defined in section 33A-1 of the Code" (that is, the armed violence statute). However, the *Beard* decision provides no authority for the proposition that the armed violence definition would control and, in any event, was decided by our appellate court prior to *Ross* and prior to *Washington*.

¶ 56    Arguably, the trial court's erroneous instruction would have been harmless if this case were proceeding under subsection (a)(4) as amended, since that subsection does not require that defendant be armed with a "dangerous" weapon but only requires that he "carries on or about his or her person or is otherwise armed with a firearm" without any qualification as to the nature of that firearm. See *People v. Hill*, 346 Ill. App. 3d 545, 549 (2004) (under subsection (a)(2) of postamended armed robbery statute, which states that defendant "carries on or about his or her person or is otherwise armed with a firearm" (720 ILCS 5/18-2(a)(2) (West 2000)), the State did not have to prove that the defendant's firearm was operable, because "the focus is on the intended purpose of the firearm based upon its design, not the current status of its ability to be used as intended"). However, as discussed, neither side argues that this case should be treated as proceeding under postamended subsection (a)(4), and, in fact, pursuant to *Hauschild* and *Washington*, defendant was properly charged under the preamended version of subsection (a)(3), which specifically requires that the weapon in question be "dangerous."

¶ 57    The State next contends that its position is supported by *Ligon*, 365 Ill. App. 3d at 116, in that the definition of dangerous weapons in the supplemental instruction "closely follows" the categories of dangerous weapons listed in *Ligon*. In this regard, the State cites the following passage from *Ligon*:

> " '[O]ur courts have defined the term by dividing objects alleged to be "dangerous weapons" into four categories. [Citation.] The first category consists of objects that are dangerous *per se*, such as knives and loaded guns. [Citation.] The second category consists of objects that are never dangerous weapons, such as a four-inch plastic toy gun. [Citation.] The third category consists of objects that are not necessarily dangerous

weapons but can be used as such, for instance, an unloaded gun or a toy gun made of heavy material, which are incapable of shooting bullets but can be used as a bludgeon [citation] or, as another example, fingernail clippers with a sharpened file [citation]. The fourth category consists of objects that are not necessarily dangerous but were actually used in a dangerous manner in the course of the robbery.' " *Id.* (quoting *People v. Thorne*, 352 Ill. App. 3d 1062, 1070-71 (2004)).

The State baldly argues that the first of these categories, "objects that are dangerous *per se*, such as knives and loaded guns" (internal quotation marks omitted) (*Ligon*, 365 Ill. App. 3d at 116), mirrors that part of the supplemental instruction that came from the armed violence statute. We disagree. Unlike that part of the definition in the supplemental instruction that came from the armed violence statute, *Ligon* limited its first category of weapons that are dangerous *per se* to guns which are loaded, specifically stating that if there is no evidence that a gun is loaded, it does not fall within the category of objects that are dangerous *per se*:

> "In *Thorne*, there was no evidence presented at trial that the BB gun the defendant used in the robbery at issue was loaded or was, in fact, used in a dangerous manner during the robbery. Accordingly, we found that BB gun fell within the third category and that '[t]herefore, whether the BB gun is a dangerous weapon is a question of fact to be resolved by the trier of fact.' " *Id.* (quoting *Thorne*, 352 Ill. App. 3d at 1072).

¶ 58   The State lastly contends that, even if erroneous, the trial court's supplemental instruction did not cause any prejudice to defendant, because, as stated by counsel for the State at oral argument, the evidence against defendant was overwhelming. We disagree. We note at the outset that nobody in this appeal is contesting the jury's finding of guilt as to the lesser included offense of simple vehicular hijacking under section 18-3 (720 ILCS 5/18-3 (West 2006)). Rather, the only question at issue is whether defendant was properly convicted of aggravated vehicular hijacking due to the fact that he was "armed with a dangerous weapon" under preamended subsection (a)(3). In this regard, we find that, although there was sufficient evidence for the jury to find that defendant's weapon was dangerous, there was no evidence presented at trial that would compel such a finding. There was no evidence that the gun seen by the victim was loaded and operable. Nor was there any direct evidence as to its size, weight, and composition, as would bear upon its potential use as a bludgeon. Thus, any factual finding of dangerousness would have to be premised upon the gun's alleged actual use as a bludgeon during the commission of the crime. See *id*. In that regard, the jury was presented with two factual questions, both of which would need to be answered in the affirmative for the jury to make a finding that the defendant's weapon was dangerous. First, the jury had to decide whether the victim actually suffered any injury at all. This was a disputed issue of fact at trial. Although Criswell testified that the impact of the barrel against his forehead made his forehead "a little bloody," Officer Wedster testified that, when he responded to Criswell's call immediately following the hijacking, he did not see any injuries on Criswell, nor did he recall seeing any blood on him. It would have been the jury's task to decide whose observations were more reliable. See *People v. Brooks*, 187 Ill. 2d 91, 132 (1999) (it is the responsibility of the trier of fact to determine the weight to be accorded to witness testimony). Second, if the jury were to find that Criswell was, in fact, injured, it would have to decide whether that injury was of a nature that would indicate that the weapon

used by the defendant was capable of producing death or serious bodily harm. See *Skelton*, 83 Ill. 2d at 66 (weapon is dangerous where it is "sufficiently susceptible to use in a manner likely to cause serious injury"); *Dwyer*, 324 Ill. at 364 (defining a dangerous weapon as "an instrument that is used or may be used for the purpose of offense or defense and capable of producing death"); Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law 703 n.67 (1972) (greater penalty for armed robbery is intended "to deter the dangerous person who is actually capable of inflicting death or serious bodily harm"). We note that Criswell testified that the injury to his forehead was relatively minor, in that blood was not "coming down," he did not notice that his forehead was bleeding until it was pointed out to him by the officers who arrived on the scene, and he did not go to the doctor or the hospital for treatment. Thus, based upon both of these disputed issues, a jury finding of dangerousness was not a foregone conclusion.

¶ 59    However, the definition of "dangerous weapon" given by the trial court enabled the jury to impermissibly sidestep those disputed factual issues as long as it found that defendant's weapon was a handgun. That is, the jury may, in fact, have been skeptical as to whether Criswell sustained sufficient injury to demonstrate that defendant's weapon was capable of producing death or serious bodily injury (*Skelton*, 83 Ill. 2d at 66; *Dwyer*, 324 Ill. at 364)–in fact, it is arguable that its request for clarification as to the definition of "dangerous weapon" indicates uncertainty in that regard–but, upon receiving the trial court's definition, the jury believed any such inquiry to have been foreclosed by a finding that defendant's weapon was a handgun, which is listed, without any further qualification, as a dangerous weapon in the erroneous definition laid out by the trial court. Accordingly, the erroneous definition given to the jury may well have prejudiced the defendant.

¶ 60    Nevertheless, as previously discussed, it is not disputed that there was sufficient evidence to convict defendant of the lesser included offense of simple vehicular hijacking, nor would the incorrect definition of "dangerous weapon" given to the jury have had any impact upon the jury's determination of whether defendant committed that lesser included offense. Thus, there is no question that, at the very least, a judgment of conviction for simple vehicular hijacking should be entered against defendant. *Cf. Ross*, 229 Ill. 2d at 276 (entering judgment of conviction for lesser included offense of simple robbery where State failed to present sufficient evidence that gun used in robbery was "dangerous" so as to permit conviction for armed robbery). However, we reverse and remand for a new trial on the limited issue of whether defendant is guilty of aggravated vehicular hijacking under the preamended version of subsection (a)(3).

¶ 61                                              III. CONCLUSION

¶ 62    Lastly, defendant contends that his mittimus should be corrected to reflect the 883 days that he spent in presentencing custody as opposed to the 872 days of credit that it currently reflects. The State agrees with defendant in this regard. Accordingly, we instruct the circuit clerk to correct the mittimus to reflect 883 days of credit. See *People v. Magee*, 374 Ill. App. 3d 1024, 1035-36 (2007) (appellate court may amend mittimus without remanding to trial court).

¶ 63 Finally, the State requests that this court require defendant to pay costs and a fee of $100 to the State for having to defend this appeal. In support, the State cites *People v. Nicholls*, 71 Ill. 2d 166, 174 (1978), in which the court held that the State is authorized by statute to recover attorney fees as costs in the appellate court against "an unsuccessful criminal appellant upon affirmance of his conviction." See 725 ILCS 5/110-7(h) (West 2004); 55 ILCS 5/4-2002.1 (West 2004). However, insofar as we find defendant to be entitled to a new trial, defendant is not an unsuccessful criminal appellant, so recovery of costs is not warranted.

¶ 64 Affirmed in part and reversed in part and case remanded, with instructions; mittimus modified.